## MISSISSIPPI RIVER FUEL CORP. v. FEDERAL POWER COMMISSION.

### No. 10868.

United States Court of Appeals
Third Circuit.

Argued Jan. 23, 1953.

Decided Feb. 9, 1953.

On Cross Motions for Modification
of Opinion.

April 9, 1953.

James Lawrence White, New York City (William A. Dougherty, New York City, Charles E. McGee, Washington, D. C., on the brief), for Mississippi River Fuel Corp.

Reuben Goldberg, Washington, D. C. (Bradford Ross, Gen. Counsel, Bernard A. Foster, Jr., Asst. Gen. Counsel, and Louis C. Kaplan, Washington, D. C., on the brief), for Federal Power Commission.

Before GOODRICH, STALEY and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

Mississippi River Fuel Corporation brings this petition for review to challenge an order of the Federal Power Commission which undertook to reject and return without hearing rate schedules and supporting material constituting tariff changes

proposed by the corporation and filed with the Commission.

Petitioner is a natural gas company within the meaning of the Natural Gas Act, 52 Stat. 821, 15 U.S.C.A. § 717 et seq. Pursuant to Section 4(d) of the Act, petitioner, hereinafter called "Mississippi", filed on April 30, 1952 revised tariff sheets which it proposed should become effective June 1, 1952. As proposed, the new rate schedules would have increased the price of natural gas in sales within the jurisdiction of the Commission and would have changed the manner of determining customers' maximum rights to call upon petitioner for service. On May 29, 1952, the Commission issued an opinion and order in which it reasoned that the stated basis and justification of about one-third of the proposed increase in Mississippi's rates was an expected increase in the cost of gas to be purchased by Mississippi from its principal supplier, United Gas Pipe Line Co.; that sales of natural gas by United to Mississippi are within the jurisdiction of the Commission, and that, since no application for an increase in rates had been filed by United, it was clear that no increase in cost of supply would be experienced by Mississippi on June 1, 1952. The Commission added that it was uncertain when, if ever, such an increase in costs would occur.[1] The Commission was "not unmindful" that about two-thirds of Mississippi's proposed increased rates and other proposed changes in the method of computing charges bore no relation to the claimed anticipated increase in cost of gas purchased from United, but said that "the application for tariff changes * * * has not * * * been so constructed by Mississippi as to enable the Commission to deal with its components separately." In these circumstances, the Commission ordered the proposed rate

schedule rejected without prejudice to Mississippi's "filing proposed tariff changes which do not include indefinite, speculative and unknown increases in the cost of service."

On June 24, 1952, Mississippi applied to the Commission for rehearing of the May 29 order alleging as a principal ground of complaint that the Commission was required to grant a hearing on its proposed tariff changes and had no authority to reject its filing summarily. No action was taken by the Commission on this application and therefore, as provided by Section 19(a) of the Natural Gas Act, it is deemed to have been denied thirty days after it was filed. Mississippi now petitions for review of the Commission's order of May 29.

Section 4 of the Natural Gas Act provides:

"(d) Unless the Commission otherwise orders, no change shall be made by any natural-gas company in any such rate, charge, classification, or service, or in any rule, regulation, or contract relating thereto, except after thirty days' notice to the Commission and to the public. Such notice shall be given by filing with the Commission and keeping open for public inspection new schedules stating plainly the change or changes to be made in the schedule or schedules then in force and the time when the change or changes will go into effect. * * *

"(e) Whenever any such new schedule is filed the Commission shall have authority, either upon complaint of any State, municipality, or State commission, or upon its own initiative without complaint, at once, and if it so orders, without answer or formal pleading by the natural-gas company, but upon rea-

[1]. On May 29, 1952 United Gas Pipe Line Company filed an application for increased rates to be effective July 1, 1952. This proposed tariff schedule and supporting papers were returned by the Secretary of the Commission on June 27, 1952 because of deficiencies in form. On July 3, 1952 United made a new filing which proposed a tariff schedule to become effective August 3, 1952. By or-

der of the Commission dated July 31, 1952 these rate increases were suspended for the maximum five month period and a hearing ordered. By order of January 14, 1953 United's proposed tariff schedule became effective as of January 3, 1953, subject to bond pending conclusion of the hearing and decision by the Commission.

sonable notice, to enter upon a hearing concerning the lawfulness of such rate, charge, classification, or service; and, pending such hearing and the decision thereon, the Commission, upon filing with such schedules and delivering to the natural-gas company affected thereby a statement in writing of its reasons for such suspension, may suspend the operation of such schedule and defer the use of such rate, charge, classification, or service, but not for a longer period than five months beyond the time when it would otherwise go into effect: * * *. If the proceeding has not been concluded and an order made at the expiration of the suspension period, on motion of the natural-gas company making the filing, the proposed change of rate, charge, classification, or service shall go into effect. Where increased rates or charges are thus made effective, the Commission may, by order, require the natural-gas company to furnish a bond, to be approved by the Commission, to refund any amounts ordered by the Commission * * *."

Section 16 of the Act empowers the Commission to make such rules and regulations as are "necessary or appropriate" to the performance of its duty to execute the provisions of the Act. Among the rules and regulations promulgated pursuant to this authority is the following:

> "Notice requirements. All tariffs, and contracts or any parts thereof shall be filed with the Commission and posted not less than thirty days nor more than sixty days prior to the proposed effective date thereof, * * *" [2]

It is conceded by counsel for the Commission that all formal requirements other than the quoted rule were complied with by Mississippi in submitting its proposed tariff schedule. And it may be assumed for purposes of this case that the Commission has the power, implied from its authority to make rules and regulations, to reject a proposed filing which does not conform to such rules and regulations.[3] But the Commission contends that the quoted rule was not complied with. It argues that "pro-

posed effective date" means something more than merely the date on which the company proposes to make its new rates effective. We do not agree. The language of the rule and of the section of the statute it implements seems clear and unambiguous. Reading the words with their "ordinary and usual" meaning leaves no doubt that they simply refer to the date which the applicant states is the one on which he would like to change his rates. But for the strenuousness with which the Commission contests this point we would be content thus to dispose of it.

The Commission speaks in its order of the proposed effective date "requested" as if there may be some other proposed effective date "permitted" which becomes "the proposed effective date" within the meaning of the regulation. If the Commission's position is that the proposed effective date must be one on which the rate increase asked is justified, then the Commission must decide, whenever a proposed change is submitted for filing, that the rate change is justified before it accepts the proposed tariff for filing and orders a hearing to determine whether or not it is justified. Perhaps the Commission's position escapes this absurdity, though without achieving soundness, if all that is required by the Commission to elevate the date proposed by the company into a "proposed effective date as contemplated by the rule" is merely that it not be obvious beyond conceivable need for proof that the justification stated for the proposed increase has no reasonable relationship to the date proposed by the company.

Motions to dismiss for failure to state a cause of action and motions for summary judgment are familiar judicial devices for avoiding the delay of a full scale hearing of cases in which it is clear as a matter of law or of indisputable or easily ascertained fact that the plaintiff cannot recover. It may well be that a quasi-judicial body such as the Federal Power Commission has need for some analogous procedures to expedite the handling of those matters which come before it which can be resolved

2. 18 CFR § 154.22.

3. 18 CFR § 1.14(a) (2).

solely as matters of law or on the basis of some easily ascertained fact. But the statute which defines the powers of the Commission in natural gas matters makes no provision for any such procedures. Whether the Commission could, in the legitimate exercise of its rule-making powers, establish such procedures,[4] or whether specific statutory reform is needed, is not now before us. What we have here is an attempt by the Commission to adopt some such procedure by distorting otherwise clear words of a regulation it has itself adopted Whatever might be said of action under a regulation framed so as to attempt to authorize the type of procedure the Commission is indulging here, this attempt to achieve the result by reading it into a section of the regulations, which does not even purport to deal with anything but the formal notice which shall attend the filing of proposed tariff schedules, is clearly beyond the scope of permissible administrative interpretation of administrative regulations.

Moreover, even if there were some procedure by which the Commission could act summarily in some rather clear cases, the Commission concedes that much of petitioner's proposed tariff schedule was based on claims which could not be rejected summarily as without merit. For factors other than anticipated future rate increases of Mississippi's suppliers are the stated basis of most of what Mississippi proposes. Admitting this, the Commission argues in effect that it is asking too much to expect the Commission, after full hearing at which all relevant facts may be adduced and the parties have had opportunity to analyze the evidence and present arguments as to the applicable law, to sort the good from the bad. Yet, precisely that is a principal purpose of the hearing and a major responsibility of the Commission.

Section 4(e) of the Natural Gas Act makes special provision for the familiar situation in which, pending administrative hearing and decision, a public utility may increase its rates, subject to a possible requirement of future refunds. The Commission, upon completion of hearing and decision, is empowered, in the language of the statute, "to order such natural-gas company to refund, with interest, the *portion of such increased rates* or charges by its decision found *not justified.*" [Italics added.] This provision clearly demonstrates, if demonstration be needed, that Congress contemplated that there would be cases in which, after hearing, some part of a requested increase would be approved as justified even though some other part would be found inadequately supported and disallowed. It would be arbitrary and unfair to hold that the applicant includes any item of cost which in administrative judgment may turn out to be not allowable at peril of summary rejection of his entire proposal.

We do not mean to suggest that the Commission is without power to require schedules and supporting data to be organized or broken down in convenient and readily comprehensible form. We have no doubt that certain regulations to that end may be appropriate. And at the hearing of a particular case parties and witnesses may be required to organize or divide their presentation in an indicated way so that it will be informative and understandable.

This is not such a case. The Commission has simply refused to recognize as properly before it or retain for action as prescribed by the statute a filing which met all formal requirements. On the face of Section 4 of the Natural Gas Act, relevant portions of which have been set out above, it is clear that, Mississippi's proposed tariff changes having been duly filed, the Commission had only two alternatives. By failing to act it could have allowed them to become effective, or, it could have entered upon a hearing and, pending such hearing, could have suspended the proposed new schedules for a period not exceeding five months beyond the proposed effective date. It did neither of these things. It purported to follow a third course, rejection without hearing—a course for which it cannot show even color of statutory authority.

We can understand, as the argument in this case has seemed to imply, that the Commission may have had to contemplate serious injury to the public interest because of its inability with very limited funds and

4. Cf. 18 CFR § 112.

staff to perform the enormous task of investigation and analysis imposed upon it in times when so many public utilities are submitting important proposals within its jurisdiction and the statutory scheme requires it to act promptly or let proposals go by default. But the remedy lies with Congress. If changes in the law are needed, or more personnel to administer existing law, or both, it is not for the administrative agency or the courts to try to make up for this deficiency by taking unauthorized short cuts or indulging time saving procedures which fail to accord parties the rights which the law as written gives them. Viewed in most favorable light, that seems to us to be what the Commission has tried to do here. It follows that the order of May 29 must be set aside as wholly beyond the authority of the Commission.

Beyond that, further procedure before the Commission must, insofar as is possible under the statute, minimize the injury caused Mississippi by the Commission's illegal order. The Commission and the public already have had more than thirty days notice of the proposed tariff changes as required by Section 4(d) of the Natural Gas Act. In addition, since the proposed effective date of the changes, June 1, 1952, more time has elapsed than the maximum period of five months during which the Commission could lawfully have suspended the proposed new schedules. Of course theoretically the Commission could have completed a hearing and properly disapproved the new rates within the five month period. But we have already alluded to suggestions that the docket of the Commission is seriously overcrowded. However that may be, the Commission having chosen an unlawful procedure rather than a lawful one cannot complain that the remedy ignores what it might have done but did not.

Accordingly, we think the Commission has no right to prevent the petitioner from putting its proposed new schedules into effect at once under the procedure which the statute authorizes the proponent of a new tariff to follow after the end of a five month suspension. To this end, the Commission shall accept again the original papers filed by the petitioner on April 30,

1952, or duplicates thereof. Immediately upon such resubmission the petitioner shall be privileged to make its proposed new schedules effective by filing such a motion for that purpose as is authorized and required by Section 4(e) of the Natural Gas Act, subject to the right of the Commission forthwith to direct and give notice of a hearing upon the new schedules and to safeguard customers of petitioner in the payment of the new tariffs pending the outcome of such hearing by requiring petitioner to file such bond as is contemplated and authorized by Section 4(e).

The order of May 29, 1952 will be vacated and the cause remanded to the Federal Power Commission for further proceedings consistent with the authorization and direction of this opinion. The mandate of this court will issue forthwith.

## On Cross Motions for Modification of Opinion April 9, 1953.

Both parties have indicated by motions their dissatisfaction with our opinion filed February 9, 1953. Mississippi River Fuel Corporation, the prevailing party, complains that we have not enabled it to get all of the relief to which it is entitled. Federal Power Commission, the losing party, seeks merely that the Court correct the impression conveyed by its opinion that some factor or factors other than the Commission's best judgment as to the meaning and effect of its own rules motivated the order which the Court has vacated. We think this latter motion requires no more than this acknowledgement of its submission and a statement, which we now make, that we accept what the Commission says as a correct statement of its position. The foregoing pronouncement shall constitute the action of the Court on the motion of the Commission.

The motion of Mississippi concerns an altogether different issue. It seeks a modification of our opinion in manner calculated to have material effect on the future course of this controversy before the Federal Power Commission. Briefly, Mississippi wants our disposition of the appeal so changed that it may now put into effect retroactively as of June 1, 1952 the increased

904

rates which it originally proposed April 30, 1952 and which the Commission rejected on May 29, 1952. It was our considered judgment at the time of decision that this should not be done. Our view has now been supported by a filing *amicus curiae* by counsel for Laclede Gas Company. In that filing it is represented that to increase Mississippi's charges retroactively to June 1, 1952 would force its principal customer to pay additional retroactive charges of about $3,000,000 for gas it already has resold to its own customers on the basis of Mississippi's existing rate to it. Such history can not be changed and in our judgment should not be ignored. It is neither realistic nor proper to treat an affirmative though legally misconceived rejection of plaintiff's proposed rate increase by the administrative body which had jurisdiction over the subject matter either as a tacit approval or as something that never happened. We find nothing in the statute that sanctions such a course. We are satisfied that the decision we already have made is fair and in accordance with law. Cf. United States v. Morgan, 1939, 307 U.S. 183, 59 S.Ct. 795, 83 L.Ed. 1211. The motion of Mississippi River Fuel Corporation will be denied.