**SUNRAY MID-CONTINENT OIL COMPANY, Petitioner,**

v.

**FEDERAL POWER COMMISSION, Respondent.**

No. 6589.

United States Court of Appeals
Tenth Circuit.

May 6, 1961.

Homer E. McEwen, Jr., Tulsa, Okl. (M. Darwin Kirk, Tulsa, Okl., and Dale E. Doty, Washington, D. C., on the brief), for petitioner.

Peter H. Schiff, Washington, D. C. (John C. Mason and Howard E. Wahrenbrock, Washington, D. C., on the brief), for respondent.

Before LEWIS and BREITENSTEIN, Circuit Judges, and KERR, District Judge.

LEWIS, Circuit Judge.

Petitioner, Sunray Mid-Continent Oil Company, seeks review of an order of the Federal Power Commission the import of which was to deny as presently effective a change in rate level upon sales of natural gas made by Sunray to Northern Natural Gas Company pursuant to contract. The case does not explore the merits of rates but is limited to a jurisdictional attack upon the power of the Commission to question the rate level under the procedural circumstances premising the controversy.

The critical event giving rise to the present issues was a contract change agreed to by Sunray and Northern on March 28, 1960. The original contract

between the parties had provided for the sale and purchase of natural gas from leaseholds in Ochiltree County, Texas, and Beaver County, Oklahoma, at 15½¢ per 1000 cubic feet of gas delivered, reserving, however, to Sunray as seller the right to process and retain all liquid hydrocarbons. On the date indicated Sunray for a consideration of 1¢ per Mcf relinquished its right to process and reclaim the liquid constituents from the gas then being delivered to Northern. The total contract consideration was thus raised from 15½¢ per Mcf to 16½¢ per Mcf.

Sunray then reported the contractual change to the Commission by filing a "Notice of Change in Rate Schedule" asserting the change to be effective upon date of authorization or 30 days after date of filing, whichever first occurred. The contract amendment was attached to the filing and the notation made:

"The subject contract was amended March 28, 1960, to provide for the waiver of Applicant's right to process the casinghead and gas-well

gas reserves for the extraction of liquefiable hydrocarbons, and the payment to Sunray by the Purchaser of one (1¢) cent for such liquids in each one thousand (1,000) cubic feet of gas delivered. The subject amendment is dated March 28, 1960 and is attached hereto as Exhibit 'A-1'."

Sunray's filing did not include a comparative statement of sales and revenues as required by the Commission's regulation in respect to change in rate level.[1] Sunray succinctly stated its reason for not so doing:

"A comparative statement of sales and revenues in connection with the proposed change is not attached hereto for the reason that the proposed change does not change the rates or charges made for the natural gas sold to Purchaser under this contract."

The Federal Power Commission filed these documents on April 11 and notified Sunray of its action by form letter:

"This is to advise you that the rate filings listed at the bottom of

---

[1]. Sec. 154.94 Changes in Rate Schedules, 18 CFR (1960 Supp) 154.94:

"(e) (1) *With each change in rate schedule* there shall be submitted reasons, nature, and basis for the proposed change, and the information required under subdivisions (i) through (iv) of this subparagraph:

"(i) The designation of the FPC Gas Rate Schedule (by name of seller and rate schedule number), the names of the parties on whose behalf the change in rate schedule is made, and the date on which the change is proposed to be made effective;

"(ii) The name of the purchaser;

"(iii) Description of the contract provision authorizing the change;

"(iv) The geographical location (field or area, county, and State) where delivery is made;

"2. *With each change in rate level,* in addition to the foregoing, there shall be submitted the following information and data (actual data shall be used wherever possible and estimates shall be so designated and explained):

"(i) The present total effective price in cents per Mcf with the base rate and any provisions for tax reimburse-

ment, gathering charge, dehydration charge and other components thereof show separately, and the measurement pressure base (psia);

"(ii) Any deductions from the present total effective price in cents per Mcf by the purchaser for amortization, dehydration, gathering, treating, etc. Note if subject to Btu adjustment;

"(iii) The proposed total price in cents per Mcf with the base rate and any provisions for tax reimbursement, gathering charge, dehydration charge and other components thereof shown separately, and the measurement pressure base (psia);

"(iv) Any deductions from proposed total price in cents per Mcf by the purchaser from amortization, dehydration, gathering, treating, etc. Note if subject to Btu adjustment;

"(v) A comparative statement of the total sales made and total revenues therefrom under the effective rate schedule and under the proposed changed rate schedule, or rate, charge, classification or service contained in the filing, for the 12 months immediately preceding and the 12 months immediately succeeding the proposed effective date of the rate sched-

this letter have been accepted for filing and that such rate schedules have become effective on the dates shown [May 12, 1960] upon expiration of 30 days' statutory notice."

Sunray and Northern interpreted these procedures as authorizing the payment of an increased contract price on and after May 12, 1960 and delivered and accepted gas from such date at 16½¢ per Mcf and until July 25, 1960 when the Commission by letter refuted the contracting parties' construction of the Commission action. The Commission stated its position thus:

"By the foregoing amendment, Northern agreed to increase your contract price by 1.0¢ per Mcf in consideration of your relinquishing your rights to process the gas for the removal of liquid hydrocarbons. Your amendment was not accompanied by a comparative statement of sales and revenues nor by a statement in support of the increased rate. Accordingly, such amendment was not considered to be a change in rate but only a contractual vehicle under which Sunray could at a future date file a notice of change in rate. As such, the amendment was accepted for filing by the Commission's letter dated May 16, 1960."
(The date is apparently a typographical error.)

Upon receipt of the Commission letter-order, Northern ceased payment of the additional 1¢ per Mcf; Sunray applied

for reconsideration of the Commission order and was denied; and the instant petition followed.[2]

In presenting to the Commission its claim to an absolute right to payment from Northern of 16½¢ per Mcf on and after March 12, 1960, Sunray asserted the finality of its original notice and the invalidity of the Commission's July 25 letter-order upon several separate jurisdictional grounds. Each was premised upon the consistent claim that Sunray's original Notice of Change in Rate Schedule was filed under the legal theory that the Commission had no rate jurisdiction over the amendment to Sunray's contract with Northern. The Commission's ruling that Sunray's original notice was entitled to acceptance and was entitled to Commission filing only as a contract change[3] apparently did not require the Commission to reach, in these proceedings, the pivotal question of whether the contract amendment effected a jurisdictional sale. In any event, Sunray in these proceedings does not preserve or press a claim of a non-jurisdictional sale. Rather, petitioner now points out that the Commission was fully apprised of Sunray's claim that such sale was non-jurisdictional because of the specific negation of a rate change in the Notice of Change in Rate Schedule; that being so apprised the Commission could manifest its disagreement with the theory by rejecting the filing as not complying with the Commission's regulations (footnote 1, supra) or by waiving the de-

ule tendered for filing, and the difference in the total sales and total revenues for each of the 12-month periods." (Emphasis added.)

2. Sunray also filed a new notice specifically showing a 1¢ rate change whereupon the Commission ordered hearings and suspended the proposed rates until March, 1961. The parties agree that the issues of the present petition are entitled to entirely independent consideration.

3. Sec. 154.92 of the Commission's regulations requires the filing of rate schedules by every independent producer and

Sec. 154.93 defines rate schedule as follows:
"For the purpose of §§ 154.92 through 154.101 'rate schedule' shall mean the basic contract and all supplements or agreements amendatory thereof, effective and applicable on and after June 7, 1954, showing the service to be provided and the rates and charges, terms, conditions, classifications, practices, rules and regulations affecting or relating to such rates or charges, applicable to the transportation of natural gas in interstate commerce or the sale of natural gas in interstate commerce for resale subject to the jurisdiction of the Commission."

ficiency and proceeding to examine the rate change pursuant to Sec. 4(e) of the Natural Gas Act. 52 Stat. 822, 15 U.S.C.A. § 717c(e). Since the Commission did neither the petitioner claims the 16½¢ price to be effective both through affirmative acceptance of the rate by the Commission in its April 11 letter and the jurisdictional limit of 30 days set upon the Commission in Sec. 4(d) of the Act. See Mississippi River Fuel Corporation v. Federal Power Comm., 3 Cir., 202 F. 2d 899. We deem petitioner's argument to be basically faulty.

 Sec. 4(d) of the Natural Gas Act requires natural gas companies to file with the Commission all contract changes regardless of whether such changes affect the rate level or whether they do not. The basic contract together with amendments is the rate schedule which at all times must be available for Commission use and public inspection. The compulsion of Sec. 4(d) and the potential of its dual purpose are recognized and clearly set out in the Commission's regulation 154.94, supra. Paragraph (e) (1) sets forth the information required for all contract changes and (e) (2) of the additional information required when such changes are intended as notice of a proposed change in rate level. And we know of no burden placed upon the Commission to explore, at its peril and that of the public interest, the facets of a notice of contract amendment to determine the subjective legal theory that may influence the extent of notice given. Here, Sunray was required to give notice of the contract amendment regardless of whether a change in rate level was involved. The company negatived in the notice that new rate charges were then being sought and the Commission was justified in accepting the filing of the contract amendment for what it purported to be—a change of contract not affecting the rates for natural gas sold. The use of a form letter to acknowledge the acceptance of Sunray's filing, which form we understand is also used for the acceptance of a change in rate level with applicable data added, may have led Sunray and Northern into a mistaken interpretation of the Commission's intended action and may suggest procedural improvement for the future. But the now disputed letter-order of July 25 is not inconsistent with the earlier acceptance of Sunray's filing and cannot be used as a jurisdictional bar to the Commission's right to review and determine the question of rates. The Commission was correct in holding that neither by its affirmative action nor by its non-action was it bound to accept a new rate, the existence of which was expressly denied by the filing company.

The action of the Commission is affirmed.