The CONNECTICUT LIGHT AND POWER COMPANY, Petitioner,

v.

FEDERAL ENERGY REGULATORY COMMISSION, Respondent, Connecticut Municipal Group, Intervenor.

No. 78–2312.

United States Court of Appeals, District of Columbia Circuit.

Argued 14 Feb. 1980.

Decided 30 May 1980.

Robert P. Wax, Hartford, Conn., with whom James R. McIntosh, Hartford, Conn., was on the brief, for petitioner.

Rhodell G. Fields, Atty., Federal Energy Regulatory Commission, Washington, D. C., with whom Howard E. Shapiro, Sol., Federal Energy Regulatory Commission, Washington, D. C., was on the brief, for respondent.

Robert A. O'Neil, Washington, D. C., for intervenor.

Charles F. Wheatley, Jr. and James Howard, Washington, D. C., were on the brief, for intervenor.

Before BAZELON, Senior Circuit Judge, and WILKEY and WALD, Circuit Judges.

Opinion for the Court filed by Circuit Judge WILKEY.

Dissenting opinion filed by Circuit Judge WALD.

WILKEY, Circuit Judge:

Petitioner Connecticut Light and Power Company (CL&P) challenges an order of the Federal Energy Regulatory Commission (FERC) suspending for five months CL&P's proposed new rate schedule. FERC and intervenor Connecticut Municipal Group (Municipals) urge us to dismiss the appeal as moot in view of CL&P's settlement offer to refrain from seeking recovery of the suspended rates. We hold that this case is not moot, and set aside the suspension order because of the Commission's failure to disclose reasons for the length of the suspension period.

## I. FACTS

On 31 July 1978 CL&P filed a proposed rate increase (the "R–4 rate") of $2,736,000 with the Commission, requesting an effective date of 1 September 1978 for the new rate.[1] On 21 August 1978 six of CL&P's wholesale customers, constituting the Connecticut Municipal Group,[2] filed a Protest and Petition to Intervene requesting suspension of the R–4 rate for the maximum five-month period permitted by the Federal Power Act.[3] In its Answer to Protest and Petition CL&P argued that any suspension should be limited to a one-day period in view of the company's weakened financial condition.[4] The Commission on 31 August 1978 issued an order which, *inter alia*, suspended the rate increase for five months.[5] In explanation, the Commission stated: "Our review of the filing and the pleadings indicates that the proposed rates have not been shown to be just and reasonable and may be unjust, unreasonable, unduly discriminatory, preferential, or otherwise unlawful. Consequently, we will suspend the proposed rates for five months  .  .  . ."[6]

CL&P made an Application for Rehearing and Reconsideration on 29 September 1978.[7] It pointed out that the Commission did not discuss the arguments CL&P had made against the five-month suspension. It urged that the Commission reconsider its suspension-period decision, and "[a]t a minimum  .  .  . explain the reasons for its ordered suspension period, particularly in light of the Company's precarious financial condition."[8] An Order Granting Rehearing for Further Consideration was issued 30 October 1978,[9] and on 22 November 1978 FERC issued its Order on Rehearing deny-

---

1. CL&P's transmittal letter and FERC's Notice of Filing of Tariff Change are reprinted in the Joint Appendix (J.A.) at 1 and 15–22 respectively.

2. Members of the group participating in this proceeding include: City of Groton Department of Utilities; Borough of Jewett City Electric Light Plant; Second Taxing District, City of Norwalk; Third Taxing District, City of Norwalk; City of Norwich, Gas & Electric Department; and Town of Wallingford, Department of Public Utilities, Electric Division.

3. Protest and Petition to Intervene of the Connecticut Municipal Group, *reprinted in* J.A. at 36–51.

4. Answer of the Connecticut Light & Power Company to Protest and Petition to Intervene of the Connecticut Municipal Group, *reprinted in* J.A. at 52–60.

5. Order Accepting for Filing, Suspending Proposed Rate Increase, Granting Intervention, Denying Request for Phased Hearing, Providing for Hearing and Establishing Procedures, Docket No. ER78–517 (31 Aug. 1978), *reprinted in* J.A. at 2–7.

6. *Id.* at 2, *reprinted in* J.A. at 3.

7. Application by the Connecticut Light & Power Company for Rehearing and Reconsideration of the Commission's Order of August 31, 1978, *reprinted in* J.A. at 61–73.

8. *Id.* at 10, *reprinted in* J.A. at 70.

9. Order Granting Rehearing for Further Consideration, Docket No. ER78–517 (30 Oct. 1978), *reprinted in* J.A. at 9–10.

ing CL&P's Application for Rehearing, concluding that the Application raised "no new issues of fact or law" that might warrant rehearing with respect to the suspension period.[10] CL&P filed a petition for review of the 31 August and 22 November 1978 orders with this court on 26 December 1978, challenging a summary cost-of-service determination made by FERC as well as the rate suspension.

On 8 February 1980 CL&P filed a joint motion of the parties requesting the court's permission to withdraw the cost-of-service issue from consideration because of an offer of settlement filed with the Commission on 5 February 1980.[11] In the offer CL&P specifically preserved the suspension period issue for review by this court, but added: "Nevertheless, as part of this Offer of Settlement, CL&P agrees that it will not, at any time, seek to recover any additional revenues from any of its R–4 Rate customers as a result of the resolution of the appeal."[12]

Arguing that the offer of settlement eliminated the only impact on CL&P from the suspension order, the Municipals on 13 February 1980 moved to dismiss the appeal as moot.[13] We issued an order on 3 March 1980 denying the motion to dismiss.[14]

## II. MOOTNESS

█ CL&P notes that the settlement allegedly mooting this petition will not become final until the offer of settlement has been reviewed, approved, and made effective by FERC, but for the purpose of this motion it "is willing to stipulate that all *financial* disputes related to the Commission's suspension order have been settled."[15] We will assume with the parties that the offer of settlement eliminates any direct financial aggrievement redressable by this court caused by the five-month suspension period.

Nevertheless, for two reasons we find that the settlement offer does not moot this petition. First, the settlement does not resolve all the issues presented in the petition.[16] CL&P was aggrieved not only by FERC's forbidding collection of the rate increase during the suspension, but also by the Commission's failure to reveal the reason for the length of the suspension period. Had FERC's rationale been disclosed, CL&P maintains that it conceivably could fashion future rate filings to avoid such lengthy suspensions and file meaningful rehearing petitions. Although the settlement appears to resolve the financial issue here, it does not deal in any way with CL&P's interest in discovering the Commission's reasoning behind the five-month suspension. This interest being "arguably within the zone of interests to be protected or regulated by"[17] section 205(e) of the Federal Power Act,[18]

---

**10.** Order on Rehearing, Docket No. ER78–517, slip op. at 1 (22 Nov. 1978), *reprinted in* J.A. at 11.

**11.** Joint Motion of the Parties Relative to Disposition of One of Two Issues on Appeal. The cost-of-service issue dealt with FERC's summary rejection of inclusion by CL&P in its costs of service of any costs incurred to support research programs of the Electric Power Research Institute. Because of the offer of settlement mooting the issue, we do not further discuss the question in this opinion.

**12.** Offer of Settlement at 2.

**13.** Motion of Connecticut Municipal Group to Dismiss Appeal as Moot. On 25 Feb. 1980 FERC filed a Commission Response to Motion to Dismiss in support of intervenor's motion.

**14.** *Connecticut Light & Power Co. v. FERC, No. 78–2312 (D.C.Cir. 3 Mar. 1980).*

**15.** Response in Opposition to Motion of Connecticut Municipal Group to Dismiss Appeal as Moot at 3 (emphasis in original).

**16.** *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 333, 100 S.Ct. 1166, 1171, 63 L.Ed.2d 427 (1980) ("a confession of judgment by defendant on less than all the issues [does not] moot an entire case; other issues in the case may be appealable").

**17.** *Data Processing Serv. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

**18.** 16 U.S.C. § 824d(e) (1976) (when FERC suspends rates it must deliver "to the public utility affected thereby a statement in writing of its reasons for such suspension").

we conclude that CL&P still has a "legally cognizable interest in the outcome" of this appeal.[19]

Second, as to economic issues we think this case fits within the "capable of repetition, yet evading review" doctrine of *Southern Pacific Terminal Co. v. ICC*[20] allowing review of disputes that have ended, but may arise again. This court has identified as key elements of this recurrent controversy test "[t]he likelihood of repetition of the controversy and the public interest in assuring appellate review."[21] Without question the lengthy suspension of CL&P's rate schedule is capable of repetition. The maximum statutory suspension period of five months makes it highly doubtful judicial review could be obtained before the period ended. It is theoretically possible that a company could recover revenues lost if a reviewing court subsequently invalidated the suspension order, but in practice it is not certain that such retroactive relief would be granted.[22] If we limited our consideration of suspension cases to those where economic relief was a sure possibility, such challenges might consistently evade review. In a strict sense, however, financial issues arising from challenged suspensions do not by their nature necessarily evade review, and it is particularly unlikely that such issues always will be settled by the parties prior to judicial review as they were here.

Even so, we think the public interest in resolving this recurring controversy precludes dismissal for mootness. Suspension orders have a significant effect on regulated companies and their customers. For in-

stance, in this case CL&P claims it lost over $1 million in revenues during the five-month suspension period.[23] Even if the Commission subsequently determines the filed rate to be just and reasonable, the company will be permanently deprived of the revenues it could have collected had FERC suspended the increase one day and allowed the higher rate subject to a refund condition. We think there is a significant public interest in determining whether FERC must disclose reasons for disparate suspension periods having a substantial impact on regulated companies and their customers.

Because the settlement offer does not resolve all the issues before us and in view of the public interest in resolving this recurring controversy, we find that this case is not moot.

## III. MERITS

■ Section 205(e) of the Federal Power Act, authorizing suspension orders, provides:

> [T]he Commission, upon filing with such schedules and delivering to the public utility affected thereby a statement in writing of its reasons for such suspension, may suspend the operation of such schedule and defer the use of such rate, charge, classification, or service, but not for a longer period than five months beyond the time when it would otherwise go into effect; . . . .[24]

The question here is whether the order provided the requisite statement of reasons for "such suspension." We hold that it does not.

---

**19.** *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980) (quoting *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969).

**20.** 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911).

**21.** *Alton & S. Ry. v. International Ass'n of Machinists*, 463 F.2d 872, 878 (D.C.Cir.1972).

**22.** *See, e. g., Indiana & Mich. Elec. Co. v. FPC*, 502 F.2d 336, 343–48 (D.C.Cir.1974) (although vacating FPC rate suspension order, court under its equity powers prohibited retroactive col-

lection of increased rates for the five-month period subsequent to otherwise effective date of new rates), *cert. denied*, 420 U.S. 946, 95 S.Ct. 1326, 43 L.Ed.2d 424 (1975); *Mississippi River Fuel Co. v. FPC*, 202 F.2d 899, 904 (3d Cir.) (court disallowed retroactive collection of rates to otherwise effective date of rates), *cert. dismissed*, 345 U.S. 988, 73 S.Ct. 1138, 97 L.Ed. 1397 (1953).

**23.** Brief for Petitioner at 35.

**24.** 16 U.S.C. § 824d(e) (1976).

The purported reason for the suspension is that the rates "have not been shown to be just and reasonable and may be unjust, unreasonable, unduly discriminatory, preferential, or otherwise unlawful." Use of such boiler plate language appears to be the practice of the Commission in issuing suspension orders of varying lengths.[25] For instance, in *Virginia Electric and Power Co.*,[26] issued one day before the present order, the Commission ruled

> that the proposed rates have not been shown to be just and reasonable and may be unjust, unreasonable, unduly discriminatory, preferential or otherwise unlawful. The Commission shall accept the submittal for filing and suspend the proposed rates for one month from the proposed effective date after which the rates and services will go into effect . . ..

This language is substantially indistinguishable from that of the instant case, yet the suspension period is one month rather than five months. Of course, indistinguishable rationales for differing results constitute no rationale at all. Indicating, as the Commission does, that rates may be "unjust and unreasonable" may provide a reason *for suspending* the rates, but of itself does *not* provide a reason *for different lengths* of suspension periods.[27]

WHY a five-month suspension is justified instead of one month—or one day—is within the agency's knowledge, because it consciously made a decision to impose a five-month or one day suspension. If the agency had no knowledge, standards, or rationale to guide it in making the choice, then its choice was totally arbitrary and must be set aside. If the FERC has standards or a rationale by which it chooses a period of suspension ranging from one day to five

months, then the statute commands that they be articulated, so that their reasonableness and application to the individual case can be known, and so that the regulated entities will have some guidance for the future.

Largely relying on our decision in *Municipal Light Boards v. FPC*,[28] the Commission argues that because its discretion in rate suspensions is unreviewable we must affirm the present order. In *Municipal Light Boards* we decided that the Commission's one-day suspension order was "not subject to judicial review, either as to the granting of the one-day suspension or the denial of a five-month suspension."[29] However, this ruling was limited to the context of a claim of "abuse of agency discretion," and did "not speak to a case where the claim is that the suspension action taken or declined by the agency is . . . in defiance of a 'clear and mandatory' statutory command."[30] Accordingly, while the decision to suspend CL&P's rates for five months was committed to the Commission's discretion and is not reviewable by us, we do have jurisdiction to determine whether the order complied with the statutory requirement that FERC disclose its "reasons for such suspension."

There is a distinction between a reviewing court weighing the agency's discretion and a reviewing court interpreting the statute by which the agency exercises that discretion.

The Commission maintains that its stated reasons are statutorily adequate, citing the Supreme Court's decision in the *Trans Alaska Pipeline Rate Cases*.[31] There, with respect to the ICC's suspension power, the Court declared:

---

25. *See* cases cited in Appendix to Brief for Petitioner.

26. Docket No. ER78–522 (30 Aug. 1978).

27. We are unable to locate reasons for the suspension period elsewhere in the order. The Commission does recite briefly the history of the filing and the objections raised against it, but does not indicate if the history or nature of the objections had any bearing on the length of the suspension.

28. 450 F.2d 1341 (D.C.Cir.1971), *cert. denied*, 405 U.S. 989, 92 S.Ct. 1251, 31 L.Ed.2d 445 (1972).

29. *Id.* at 1352.

30. *Id.*

31. 436 U.S. 631, 98 S.Ct. 2053, 56 L.Ed.2d 591 (1979).

[T]he Commission is required by § 15(7) to set out its reasons in writing for suspending a tariff. The usual and sufficient reason will be that the Commission has found a proposed tariff to fall on the unjust or unreasonable side of the line it has drawn, and it is a reason of precisely this sort that the Commission has given here.[32]

A similar result was reached by the Eighth Circuit in *Otter Tail Power v. FERC*.[33] Though FERC's reasons for the five-month suspension there were "couched in rather conclusory terms," the court thought it "difficult to require a detailed statement of reasons for a suspension when the primary purpose of the suspension is to allow the Commission to determine the validity of proposed rates. . . . In light of the 'overriding intent of the Congress to give full protective coverage to the consumer'" the court found the boiler plate language sufficient.[34] The reviewed order containing similar language, FERC argues we must find it statutorily sufficient.

However, it is apparent that *Trans Alaska* and *Otter Tail* deal only with the question of what constitutes a "reason" for suspending a rate increase; they do not give us guidance as to the statutory adequacy of reasons for the *length* of a suspension. Because the suspension period is meant to give the Commission a chance to inquire into the validity of the rate, it is unrealistic to expect a detailed statement dealing with the merits at the time of the suspension. *But the reasons why a rate is or is not valid ultimately and the data behind such determinations are quite different from the factors involved in the Commission's choice to suspend for one day or five months.* Disclosing reasons for the *length* of a suspension does not necessarily require the Commission to prejudge the *merits* of a rate's reasonability *vel non* at the time it suspends them in order to investigate that issue.

At oral argument the court in dialogue with counsel brought out factors which might be considered relevant by FERC in determining the length of a suspension period; among those factors could be the size of the increase, the percentage of a company's business involved, certain other terms and conditions of the increase, the complexity of issues, or the Commission's calendar. Whether any of these were considered by the Commission is anyone's guess, since FERC (or its predecessor) has never indicated by rulemaking or in individual cases what standards guide its discretion as to suspension periods. Presumably, FERC has some sort of reasons for varying suspension periods; we think that requiring the Commission, in accordance with section 205(e), to state briefly such reasons in the relevant order would not be an undue burden.

We recognize that Congress intended that the Commission have utmost freedom in exercising its discretion as to the length of rate suspensions. But that the exercise of the suspension power is to be unfettered by judicial review does not mean FERC can use the power in a capricious manner. Surely Congress did not intend that the Commission treat regulatees placed in exactly the same situation in drastically different ways. *When utilities are treated disparately, a reason must be given for the disparate treatment.* Unfettered power is never to be power exercised without reason—especially when Congress clearly called for the statement of reasons.

And these reasons must relate to the *time period* of the suspension, not just to the necessity of some suspension, which is nearly always that the proposed rate must be examined as to its justness and reasonableness. *If there are no reasons for choosing different periods, then the choice is completely arbitrary,* and the Commission should settle on giving uniform suspensions.

Section 205(d) indicates that the FERC does not have an arbitrary power to treat utilities differently without giving a reason.

---

**32.** *Id.* at 653, 98 S.Ct. at 2066.

**33.** 583 F.2d 399 (8th Cir.1978), *cert. denied,* 440 U.S. 950, 99 S.Ct. 1431, 59 L.Ed.2d 639 (1979).

**34.** *Id.* at 408 n.38 (citations omitted).

Counsel for Intervenor Municipals confidently asserted at oral argument that the FERC indeed did have this arbitrary power. We find no authority for this. We also note that treating regulated entities, whose apparent fact situation is stipulated to be the same, in a markedly different manner might give rise to an Equal Protection problem. Prescribing a one day, or one month, or five months suspension of rate collection is treatment in a markedly different manner.

Determinations both whether a rate should be suspended and for how long have a substantial impact on consumers and companies, both are unreviewable by us, and we think both should be accompanied by reasons elaborated by the Commission. Section 205(e) requires reasons not merely for *the* suspension, but "for *such* suspension." Length is a significant part of the suspension decision; reasons must be given for the period selected.

That reciting only nonexplanatory boiler plate is an apparently long standing Commission practice does not validate the failure to disclose reasons for suspension periods. It would "make a mockery of the judicial function" to rule "that administrative agencies are entitled to violate the law if they do it often enough." [35] The Commission should have enunciated standards for rate suspension periods through rulemaking or adjudication years ago. That the Commission has consistently failed to comply with the statutory mandate does not require our acquiescence. [36]

The same boiler plate recited in each order cannot possibly be a rationale for a one-day suspension and at the same time a rationale for a five-month suspension. The statutory requirement of a statement of reasons means reasons for the length of a suspension that fit the fact situation of the relevant case. [37] The Commission, therefore, must either engage in rulemaking to establish standards for its exercise of discretion, or it must in individual cases spell out its rational briefly, and over a period of years build a set of standards by precedent to assure that its discretion is not exercised in an arbitrary way and to give guidance to parties filing and challenging rate increases. The route the Commission takes is up to it. [38]

Because the present order does not contain a statement of reasons for the length of the suspension period, it is set aside, and the case is

*Remanded.*

WALD, Circuit Judge, dissenting:

I believe the case is moot and hence would not reach the acknowledgedly important issues ably discussed by Judge Wilkey in this case.

**35.** *Wilderness Soc'y v. Morton,* 479 F.2d 842, 865 (D.C.Cir.1973) (en banc).

**36.** *Baltimore & O. Ry. v. Jackson,* 353 U.S. 325, 330–31, 77 S.Ct. 842, 1 L.Ed.2d 862 (1957); *Wilderness Soc'y v. Morton,* 479 F.2d 842, 865 (D.C. Cir.) ("An administrative practice which is plainly contrary to the legislative will may be overturned no matter how well settled and how long standing."), *cert. denied,* 411 U.S. 917, 93 S.Ct. 1550, 36 L.Ed.2d 309 (1973).

**37.** That the Commission was particularly remiss here is indicated by its failure to even mention, much less discuss, the arguments raised in CL&P's answer to the petition for suspension. While we do not hold that FERC must with precision answer each contention advanced by parties respecting suspension periods, we think FERC's failure even to acknowledge the objections strengthens our conclusion that the order is mute with respect to reasons for the suspension length.

**38.** *NLRB v. Bell Aerospace Co.,* 416 U.S. 267, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974).