686 F.2d 43
 222 U.S.App.D.C. 321
 SOUTHERN CALIFORNIA EDISON COMPANY, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
City of Vernon, California, Cities of Anaheim, Riverside,
Banning, Colton and Azusa, California, Intervenors.
 No. 81-1599.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued April 7, 1982.
Decided Aug. 31, 1982.
 
 Brian J. McManus, with whom Richard M. Merriman, Stephen G. Kozey and Eugene Wagner, Washington, D. C., were on the brief, for petitioner. William E. Marx and Lisa H. Powell, Washington, D. C., also entered appearances for petitioner.
 A. Karen Hill, Atty., F. E. R. C., with whom Charles A. Moore, Gen. Counsel, and Jerome M. Feit, Sol., F. E. R. C., Washington, D. C., were on the brief, for respondent.
 
 
 1
 Sandra J. Strebel, Bonnie S. Blair and Stephen C. Nichols, Washington, D. C., were on the brief, for intervenors Cities of Anaheim, et al.
 
 
 2
 Arnold Fieldman and Channing D. Strother, Jr., Washington, D. C., entered appearances for intervenor City of Vernon, California.
 
 
 3
 Before ROBINSON, Chief Judge, MacKINNON, Circuit Judge, and LARSON,* Senior District Judge for the District of Minnesota.
 
 
 4
 Opinion for the Court filed by Circuit Judge MacKINNON.
 
 
 5
 Concurring opinion filed by Chief Judge ROBINSON.
 
 MacKINNON, Circuit Judge:
 
 6
 Petitioner Southern California Edison Co. (Edison) challenges an order of the Federal Energy Regulatory Commission (FERC or Commission) suspending for five months Edison's proposed new rate schedule and rejecting outright without a hearing Edison's proposed "attrition allowance" as a component of this new schedule. Because we find FERC's suspension order unreviewable and the allowance rejection supportable in full, we reject Edison's challenge and affirm FERC's order on both counts.
 
 I. Facts
 
 7
 On December 16, 1980, Edison filed a proposed two-step rate increase for service to its nine wholesale customers.[1] The first phase rates were proposed to become effective on February 14, 1981, and were to result in approximately $18.6 million in additional revenues for the twelve month period ending December 31, 1981. Edison proposed to make the second phase rates effective simultaneously with the first, and expected as a result to produce additional revenues of approximately $23.7 million.
 
 
 8
 Notice of the filing was issued on December 22, 1980, with comments due on or before January 9, 1981. On January 8, 1981, Anza Electric Cooperative, Inc. filed a petition to intervene and protest, requesting that Edison's proposed rates be suspended and set for hearing. The next day, the City of Vernon, California also filed a petition to intervene and protest, requesting, inter alia, a five month suspension of both the first and second phase rates. Finally, also on January 9, 1981, the Cities of Anaheim, Riverside, Banning, Colton, and Azusa, California filed a protest, petition to intervene, motion to reject, request for a five month suspension on both rates, and a request for summary disposition of certain issues, including Edison's proposed first phase "attrition allowance."
 
 
 9
 On January 26, 1981, Edison filed an answer which challenged the specific objections raised by the various intervenors.
 
 
 10
 On February 13, 1981, FERC issued an order accepting a modified form of the proposed rate schedules for filing, but suspending operation of those rates for a term of five months.[2] After making reference to a number of past decisions setting out considerations underlying FERC's policy regarding rate suspensions such as the one at issue, the Commission noted:
 
 
 11
 For the reasons given (in those decisions), we have concluded that rate filings should generally be suspended for the maximum period permitted by statute where preliminary study leads the Commission to believe that the filing may be unjust and unreasonable or that it may run afoul of other statutory standards. We have acknowledged, however, that shorter suspensions may be warranted in circumstances where suspension for the maximum period may lead to harsh and inequitable results. Such circumstances have not been present here. We shall therefore accept (both) the proposed ... rates for filing, as modified by this order, and suspend them for five months from 60 days after filing ...
 
 
 12
 Order Accepting for Filing and Suspending Proposed Rates, Granting Summary Disposition in Part, Denying Motions to Reject, Granting Interventions, and Establishing Procedures at 6 (JA 90).
 
 
 13
 In addition, the Commission summarily rejected without a hearing Edison's proposed first phase "attrition allowance"[3] because it "elevate(d) the 1981 test year projected costs to the 1982 expense levels without the filing of timely cost supporting statements as required by section 35.13 (18 C.F.R. § 35.13) of the (Commission's) regulations." Id. at 3-4 (JA 87-88). The Commission then ordered Edison to file revised first phase rates and cost of service statements "within 30 days of the issuance of this order to reflect the exclusion of the attrition allowance." Id. at 4 (JA 88).
 
 II.
 
 14
 Petitioner here challenges both the suspension order and the attrition allowance rejection. We dismiss the first challenge as dealing with unreviewable subject matter, and the second challenge as being without merit.
 
 A. The Suspension Order
 
 15
 Petitioner primarily attacks the five month suspension order on the grounds that the Commission did not justify in any fashion whatsoever its decision to impose the maximum statutory suspension on the operation of Edison's proposed rates. That omission, petitioner alleges, violates this court's holding in Connecticut Light and Power Company v. FERC, 627 F.2d 467 (D.C.Cir.1980). In that case, FERC suspended the proposed rates in question for a period of five months, saying only "that the rates 'have not been shown to be just and reasonable and may be unjust, unreasonable, unduly discriminatory, preferential, or otherwise unlawful.' " 627 F.2d at 471. No elaboration on the policy behind the decision to suspend for five months, as opposed to suspending for a lesser period, was provided. We held that some rationale for the time element must be provided.
 
 
 16
 If the FERC has standards or a rationale by which it chooses a period of suspension ranging from one day to five months, then the statute commands that they be articulated, so that their reasonableness and application to the individual case can be known, and so that the regulated entities will have some guidance for the future.
 
 
 17
 Id. Accordingly, we remanded to FERC for an accounting of its reasons for choosing a five month suspension period. Id. at 473.
 
 
 18
 Petitioner's reliance on Connecticut Light and Power is misplaced. Unlike the situation in that case, the Commission in the case at bar provided petitioner with reasons supporting its actions. Specifically, the Commission incorporated by reference the policy analysis on the suspension question set out in detail in three previous Commission suspension orders (all of which issued after Connecticut Light and Power and all of which scrupulously adhered to the holding in that decision.)[4] Applying that policy analysis, the Commission determined that the five month suspension was in order, noting in the process, "(w)e have acknowledged ... that shorter suspensions may be warranted in circumstances where suspensions for the maximum period may lead to harsh and inequitable results. Such circumstances have not been presented here."[5] (JA 90).
 
 
 19
 In supplying petitioner with the analytical framework behind its decision to suspend, the Commission has clearly met the mandate of Connecticut Light and Power. Having done so, it may not be held accountable on appeal to this court for any other aspect of the suspension action. As we held recently in Delmarva Power & Light Co. v. FERC, 671 F.2d 587 (D.C.Cir.1982), once the reasons behind imposing a rate suspension of a given length have been articulated to the satisfaction of Connecticut Light and Power, the suspension decision itself is "utterly inappropriate for judicial review and manifestly within the agency's province.... It is one thing to require that a rationale be given, it is something else to examine the merits of the rationale so expressed."[6] 671 F.2d at 595.
 
 
 20
 Accordingly, we decline review of petitioner's challenge to the Commission's five month suspension order because that challenge is patently beyond our jurisdiction.
 
 B. The Attrition Allowance
 
 21
 The Commission rejected Edison's "attrition allowance" without a hearing because it elevated the 1981 projected costs to the 1982 expense levels without the filing of timely cost supporting statements as required by 18 C.F.R. § 35.13. We uphold that rejection. The Commission's regulation is explicit in allowing a company to present estimated cost data for a twelve-month period only, beginning no later than the proposed effective date of the new rates.
 
 
 22
 In addition (to twelve months of actual costs), the public utility shall file statements A through P (relating principally to various costs of providing the service) together with related work papers based on estimates for any twelve consecutive months beginning after the end of Period I but no later than the date the rates are proposed to become effective (Period II). Full explanation of the basis of each of the estimated figures shall be included. Period II shall be the "test period." (18 C.F.R. § 35.13(b)(4)(iii) (emphasis added).)
 
 
 23
 Edison does not contest the fact that some of its projected cost data extends past the twelve month limit imposed by section 35.13. Rather, it tries to vindicate its actions by pointing out that other projected cost data it submitted did satisfy Commission regulations. This argument is obviously frivolous. Because some of the projected cost data did not meet the regulatory requirements set out in section 35.13, the Commission had no choice but to reject that data in full and to inform Edison that if it wanted to be compensated at all for the costs it would incur during the test year, it would have to revise its cost projections before refiling so as to be in keeping with section 35.13.[7] The Commission furthermore acted properly in rejecting the cost data without a hearing. It is well settled that when all or part of utility rate filings contravene the Commission's regulations, no hearing is required before rejecting that portion of the filings in question. See Federal Power Commission v. Texaco, Inc., 377 U.S. 33, 44, 84 S.Ct. 1105, 1112, 12 L.Ed.2d 112 (1964); United Gas Pipe Line Co. v. Federal Power Commission, 551 F.2d 460, 463 (D.C.Cir.1977).
 
 
 24
 Edison's charge that the Commission acted improperly in rejecting the proposed "attrition allowance" must accordingly be dismissed.
 
 Conclusion
 
 25
 For the foregoing reasons, we affirm the order of the Commission suspending Edison's proposed rates for five months and rejecting in full Edison's proposed "attrition allowance."
 
 
 26
 Judgment accordingly.
 
 
 27
 SPOTTSWOOD W. ROBINSON, III, Chief Judge, concurring:
 
 
 28
 I join in affirmance of the Commission's order and, save on the suspension question, in the court's opinion. I write separately merely because my reasons for sustaining the Commission on that question differ somewhat from those advanced by my colleagues.
 
 
 29
 The five-month moratorium the Commission imposed on Edison's new rates has long since expired. Consequently, any consideration we might give that aspect of the Commission's order would have to be premised on a theory that the suspension issue might recur and yet might evade judicial review.[1] That, I think, is not so here. The most that can plausibly be argued is that the order did not heed our call in Connecticut Light & Power[2] for articulation of the standards by which the Commission determines the duration of suspensions in individual cases.[3] It may well be, as my colleagues believe,[4] that the order responded adequately by incorporation of the general policies declared in post-Connecticut Light & Power Commission decisions.[5] But more importantly in my view, any deficiency in this regard has now been cured by the Commission's still later pronouncement in West Texas Utilities Company.[6] There the Commission gave those policies the added quality of specificity by explaining that a preliminary finding that a proposed rate is "substantially excessive," thus triggering a full five-month suspension, will be made whenever the Commission estimates that more than ten percent of the proposed increase will prove to be unreasonably high.[7]
 
 
 30
 A remand of this case would not have any practical effect on the suspension of Edison's rates, for that suspension has already terminated of its own force. The only function a remand could serve, then, would be provision of a vehicle for the Commission to clarify its criteria for assigning suspension periods of different lengths in the future. Since the Commission's West Texas refinement has already accomplished that clarification, there is no basis for disturbing the suspension order brought under attack here.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. § 294(d)
 
 
 [1]
 These include the Cities of Anaheim, Azusa, Banning, Colton, Riverside, and Vernon, California, plus Anza Electric Cooperative, Inc., Arizona Public Service Company, and Southern California Water Company
 
 
 [2]
 Section 205(e) of the Federal Power Act, 16 U.S.C. § 824d(e) (1976), authorizes Commission suspension orders on proposed utility rate schedules. It provides:
 (T)he Commission, upon filing with such schedules and delivering to the public utility affected thereby a statement in writing of its reasons for such suspension, may suspend the operation of such schedule and defer the use of such rate, charge, classification, or service, but not for a longer period than five months beyond the time when it would otherwise go into effect; ....
 
 
 [3]
 The attrition allowance in this case was an amount equal to one percent of Edison's common equity that the company had added to its projected 1981 costs in order to compensate for cost increases it expected to incur in 1982
 
 
 [4]
 See Boston Edison Company, Docket No. ER80-508 (August 29, 1980) (five month suspension); Alabama Power Company, Docket Nos. ER80-506, et al. (August 29, 1980) (one day suspension); Cleveland Electric Illuminating Company, Docket No. ER80-488 (August 22, 1980) (one day suspension). These cases are included as Appendix B in Respondent's Brief
 Typical of the policy analysis employed in all of the above decisions was the following from Alabama Power:
 A recent decision of the Court of Appeals for the District of Columbia Circuit (i.e., Connecticut Light & Power, supra) has led the Commission to reassess the standards that it uses to fix the appropriate duration of a suspension period as we may impose with respect to rate increase filings. We have done this as a predicate to our acting on this matter.
 Though the regulatory schemes that the Commission administers involve a subtle and a difficult balancing of producer and consumer interests, their primary purpose is to protect the consumer against excessive rates and charges. Hence, it is our view that the discretionary power to suspend should be exercised in a way that maximizes this protection.
 The decision to suspend a proposed rate increase rests on the preliminary finding that the increase may be unjust and unreasonable or that it may run afoul of other statutory standards. The governing statutes say that "any (emphasis added) rate or charge that is not just and reasonable is hereby ... declared unlawful." This declaration places on the Commission a general obligation to minimize the incidence of such illegality.
 Based on the foregoing, the Commission has determined that, in the exercise of its rate suspension authority, rate filings should normally be suspended and the status quo ante preserved for the maximum period permitted by statute in circumstances where preliminary study leads the Commission to believe that there is substantial question as to whether a filing complies with applicable statutory standards.
 Particular circumstances may warrant shorter suspensions. Situations present themselves from time to time in which rigid adherence to the general policy of preserving the status quo ante for the maximum statutory period makes for harsh and inequitable results.
 Appendix B at 2-3.
 
 
 [5]
 The Commission has recently applied this same policy analysis in West Texas Utilities Company, Docket No. ER82-23-000 (February 26, 1982). There, the Commission noted on rehearing, for example:
 (I)n the absence of particular circumstances militating against a maximum suspension, upon a finding that there is substantial question as to whether a filing complies with applicable statutory standards, the Commission has consistently imposed a five-month suspension. Having reviewed WTU's submittal, the Commission concluded that no circumstances existed to warrant a departure from the stated policy. We continue to hold to this conclusion.
 Supp. Brief of Petitioner at 7.
 
 
 [6]
 The doctrine that a Commission decision to suspend utility rate proposals may not be reviewed by this court unless the issue presented is a bona fide challenge to the agency's fundamental jurisdiction emanates from a long line of cases both in this court and in the Supreme Court. See, e.g., Southern Railway Co. v. Seaboard Allied Milling Corp., 442 U.S. 444, 99 S.Ct. 2388, 60 L.Ed.2d 1017 (1979); Arrow Transportation Co. v. Southern Railway Co., 372 U.S. 658, 83 S.Ct. 984, 10 L.Ed.2d 52 (1963); Papago Tribal Utility Authority v. FERC, 628 F.2d 235 (D.C.Cir.), cert. denied, 449 U.S. 1061, 101 S.Ct. 784, 66 L.Ed.2d 604 (1980); Aeronautical Radio, Inc. v. FCC, 642 F.2d 1221 (D.C.Cir.1980), cert. denied, 451 U.S. 920, 976, 101 S.Ct. 1998, 2059, 68 L.Ed.2d 311, 357 (1981)
 
 
 [7]
 According to counsel for Edison at oral argument, Edison has adopted the Commission's directive on the cost projection point, and has refiled its revised projection data with the Commission
 
 
 [1]
 See, e.g., United States Parole Comm'n v. Geraghty, 445 U.S. 388, 398 n.6, 100 S.Ct. 1202, 1209 n.6, 63 L.Ed.2d 479, 490 n.6 (1980); Southern Pac. Terminal Co. v. ICC, 219 U.S. 498, 514-515, 31 S.Ct. 279, 283, 55 L.Ed. 310, 316 (1911)
 
 
 [2]
 201 U.S.App.D.C. 8, 627 F.2d 467 (1980)
 
 
 [3]
 Id. at 12, 14, 627 F.2d at 471, 473. See Delmarva Power & Light Co. v. FERC, 671 F.2d 587 at 595 (D.C.Cir.1982)
 
 
 [4]
 See Majority Opinion, text at notes 4-5
 
 
 [5]
 See id. at note 4
 
 
 [6]
 FERC No. ER 82-23-000 (Feb. 26, 1982)
 
 
 [7]
 Id. at 5