662 F.2d 155
 AMERICAN BROADCASTING COMPANIES, INC., CBS Inc., National
Broadcasting Company, Inc., Ad Hoc
Telecommunications Users Committee, and
United Press International,
Inc., Petitioners,
v.
FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Respondents,
American Telephone and Telegraph Company, and The Associated
Press, Intervenors.
 Nos. 1588 to 1590, Dockets 81-4080, 81-4082, and 81-4084.
 United States Court of Appeals,
Second Circuit.
 Argued Aug. 12, 1981.
Decided Oct. 19, 1981.
 
 Edward P. Taptich, Washington, D.C. (Joseph M. Kittner, Lawrence J. Movshin, James S. Blaszak, William K. Keane, McKenna, Wilkinson & Kittner, Washington, D.C., of counsel), for petitioners ABC, Inc., CBS Inc., NBC, Inc. and Ad Hoc Telecommunications Users Committee.
 Donald P. Zeifang, Washington, D.C. (James C. Schultz, Jeffrey D. Southmayd, Washington, D.C., of counsel), for petitioner United Press International.
 Robert Kaufman, New York City of counsel, for petitioner ABC, Inc.
 Joseph DeFranco, Washington, D.C., of counsel, for petitioner CBS Inc.
 Howard Monderer, Washington, D.C., of counsel, for petitioner NBC, Inc.
 John E. Ingle, Deputy Associate Gen. Counsel, F.C.C. Washington, D.C. (Stephen A. Sharp, Gen. Counsel, Daniel M. Armstrong, Associate Gen. Counsel, Jane E. Mago, Counsel, F.C.C., Washington, D.C., of counsel), for respondent F.C.C.
 James H. Laskey, Dept. of Justice, Washington, D.C. (William F. Baxter, Asst. Atty. Gen., Robert B. Nicholson, Dept. of Justice, Washington, D.C., of counsel), for respondent United States of America.
 Jules M. Perlberg, Chicago, Ill. (Alfred A. Green, New York City, Raymond F. Burke, Saul Fisher, Bedminster, N. J., David J. Lewis, Sidley & Austin, Washington, D.C., of counsel), for intervenor American Telephone and Telegraph Co.
 Aloysius B. McCabe, Michael Yourshaw, Robert J. Butler, Kirkland & Ellis, Washington, D.C., of counsel, for intervenor The Associated Press.
 Before MESKILL and KEARSE, Circuit Judges, and MARKEY, Chief Judge of the United States Court of Customs and Patent Appeals.*
 MARKEY, Chief Judge:
 
 Background
 
 1
 AT&T is a telecommunications common carrier, offering private line services, Message Telecommunications Services (MTS), and Wide Area Telecommunications Services (WATS).
 
 
 2
 Concerned that AT&T's monopoly services (MTS and WATS) might be providing a cross-subsidy for its private line offerings, the FCC instituted an investigation in 1965 into the lawfulness of all AT&T rates and services. A primary goal of that investigation was development of a costing methodology which would permit AT&T to compete effectively but prevent it from engaging in cross-subsidization.
 
 
 3
 In 1976, in Docket 18128, the FCC established general principles to govern the development and evaluation of rates for AT&T's various services. One such principle required that AT&T set rates for individual services that would produce for each an authorized system-wide rate of return.
 
 
 4
 Finding the Docket 18128 principles inadequate, on January 6, 1981 the FCC adopted an Interim Cost Allocation Manual (ICAM) listing detailed procedures which AT&T was to follow in allocating its costs among four broad service categories private line services, MTS, WATS, and Exchange Access Facilities. The FCC ordered that each category earn the authorized interstate rate of return.
 
 
 5
 On February 13, 1981, AT&T filed tariff revisions proposing an across-the-board rate increase of 16.4% covering each of its various private line services.[1] AT&T provided cost data showing that the increase would result in the private line category earning in the aggregate the then authorized interstate rate of 10.5%, but submitted no information relating to the individual earnings level of each of the private line services.
 
 
 6
 Petitioners and other private line users requested the FCC to reject or suspend the tariff revisions, urging that because AT&T failed to provide cost justification for each of the various private line service rates affected by the increase, the tariff filing was defective and in violation of § 201(b) of the Communications Act (Act) (47 U.S.C. § 201(b))[2] and FCC Rule 61.38 (47 C.F.R. § 61.38).[3] Petitioners did not file a complaint under § 208 of the Act.[4]
 
 
 7
 The FCC declined to reject, or suspend and investigate, the tariff filing, but acknowledged that AT&T remained obligated to fully justify its tariff rates in individual tariff proceedings. Petitioners then brought this appeal, asserting that the FCC had unlawfully abdicated its statutory obligation under § 201(b) to ensure just and reasonable rates.
 
 Issue
 
 8
 Whether this court has jurisdiction to review the FCC's refusal to reject, or suspend and investigate, tariff filings.
 
 OPINION
 
 9
 A statute, 28 U.S.C. § 2342, limits the jurisdiction of the courts of appeals to review of final decisions of the FCC. In denying petitions to reject, or suspend and investigate, AT&T's tariff filings, the FCC did not rule here on the lawfulness of those tariffs, that is, on whether the tariffs comply with § 201(b). The FCC exercised its discretionary authority under § 204 of the Communications Act to allow tariffs to go into effect without suspension and investigation.[5] That exercise constitutes a preliminary decision within the Commission's exclusive discretion. It does not result in a final order reviewable in this court.
 
 
 10
 In Arrow Transportation Co. v. Southern Railway Co., 372 U.S. 658, 83 S.Ct. 984, 10 L.Ed.2d 52 (1963) (Arrow), the Court held Interstate Commerce Commission exercises of its suspension powers nonreviewable. The Court pointed out that judicial review at that stage would undermine the agency's primary jurisdiction by bringing the courts into adjudication of the lawfulness of rates in advance of administrative consideration.
 
 
 11
 In Southern Railway Co. v. Seaboard Allied Milling Corp., 442 U.S. 444, 99 S.Ct. 2388, 60 L.Ed.2d 1017 (1979) (Southern Railway), the Court held that an agency's decision not to investigate was similarly immune from judicial review. Construing § 15(8)(a) of the Interstate Commerce Act,[6] a provision comparable to § 204, the Court said that provision cannot "be read to tolerate judicial review of the Commission's decision not to investigate the lawfulness of a proposed rate schedule." Id. at 454, 99 S.Ct. at 2394. The Court explained that though the statute which is "written in the language of permission and discretion", id. at 455, 99 S.Ct. at 2394, leaves to the ICC's unreviewable discretion the authority to investigate, the ICC's exercise of its rate-investigation authority is not "entirely unreviewable.... For any (interested party) may require the Commission to investigate the lawfulness of any rate at any time and may secure judicial review of any decision not to do so by filing a ... complaint (under the complaint provisions of the Act)." Id. at 454, 99 S.Ct. at 2394.
 
 
 12
 The nonreviewability doctrine of Arrow and Southern Railway has been held to preclude judicial review of the Federal Energy Regulatory Commission refusal to reject a tariff filing:
 
 
 13
 The decision whether to reject or to accept a rate filing is based on precisely the same information, and primarily the same considerations, that govern decisions to suspend or not to suspend, to investigate or not to investigate. The decision to accept a rate filing is a necessary adjunct to the unreviewable decision to suspend and investigate. It would make little sense to declare orders concerning suspension and investigation unreviewable if the courts may review the related order to accept a rate filing.
 
 
 14
 Papago Tribal Utility Authority v. FERC, 628 F.2d 235, 243 (D.C.Cir.1980).
 
 
 15
 When asked to review an FCC order denying petitions to reject and petitions to suspend, the court said in Aeronautical Radio, Inc. v. FCC, 642 F.2d 1221, 1234 (D.C.Cir.1980):
 
 
 16
 The decision of the FCC to accept the AT&T tariff filing satisfies the ... criteria of unreviewability. The acceptance is non-final because it is the initiation of an administrative proceeding. The Commission merely accepted the tariff and did not rule on the lawfulness of the rates to be paid.... The act of acceptance creates no irreparable harm because investigatory hearings are available for examination of the filing on the merits. 47 U.S.C. §§ 206-209....
 
 
 17
 Petitioners attempt to distinguish the foregoing precedents, urging that the FCC Order here is a final ruling on the merits of their petition. That is true but irrelevant. A petition to reject or suspend does implicate the lawfulness of the tariffs. However, finality for purposes of judicial review requires the existence of a final agency determination under which the lawfulness, or unlawfulness, of the tariffs must be considered as established, unless or until that determination is judicially reversed. A denial of a mere petition to reject or to suspend and investigate a tariff filing is neither an approval of the filed rates nor a barrier of challenges to their lawfulness. Under § 204, the FCC "may" suspend the effectiveness of new or revised rates and "may" initiate an investigation into such rates. If the FCC declines to exercise its suspension and investigation powers, rates become effective on their scheduled effective date. Their lawfulness, however, remains subject to challenge until the FCC approves the rates after "full opportunity for hearing". 47 U.S.C. § 205. That hearing may be initiated by filing a complaint under § 208, which requires the FCC to initiate an investigation into the propriety of the rates complained of. An FCC ruling following an investigation under § 208 would be a final ruling on the lawfulness of the tariff and would therefore be judicially reviewable. The Court in Southern Railway viewed the availability of such a statutory complaint procedure sufficient to render nonfinal the agency decision there involved. The same conclusion is compelled here.
 
 
 18
 Petitioners assert that IBM v. FCC, 570 F.2d 452 (2d Cir. 1978), in which this Court reviewed an FCC refusal to reject, supports judicial review here. That case was decided, however, before the Supreme Court's decision in Southern Railway. If IBM were reexamined in light of Southern Railway, the agency decision involved would necessarily be held nonreviewable. Significantly, it was the lack of substantive difference between decisions not to reject and decisions not to investigate held nonreviewable in Southern Railway that lead the court in Papago and Aeronautical Radio to hold decisions not to reject equally nonreviewable.
 
 
 19
 Finally, Petitioners attempt to escape nonreviewability by urging that they have raised an issue of statutory interpretation: "whether the FCC's construction and application of Section 201(b) of the Communications Act in the challenged decision was correct."
 
 
 20
 Nonfinal agency actions involving issues of statutory interpretation are excluded from the nonreviewability rule. See Aeronautical Radio, supra. See also Trans Alaska Pipeline Rate Cases, 436 U.S. 631, 98 S.Ct. 2053, 56 L.Ed.2d 591 (1978) (courts may review nonfinal agency action to determine whether agency exceeded bounds of statutory authority); Schilling v. Rogers, 363 U.S. 666, 80 S.Ct. 1288, 4 L.Ed.2d 1478 (1960) (courts may review agency action alleged to exceed statutory authority or to constitute a refusal or failure to exercise a statutory discretion) (dictum). Petitioners' difficulty lies in the absence of a statutory interpretation issue here, where the challenged FCC order neither construed nor applied § 201(b). The order was merely an exercise of the FCC's discretionary authority to allow the rates to become effective.
 
 
 21
 The court explained in Papago that an agency order accepting a rate filing is reviewable only if that order violates a statutory duty and even then the "order might not be immediately reviewable unless the order infringes a substantial interest of a party in a way which is not remediable upon review of final judgment", 628 F.2d at 247 and n. 30.
 
 
 22
 FCC had no statutory duty here to summarily reject or suspend and investigate AT&T's tariff filings in response to Petitioners' request that it do so. Nor have Petitioners suffered irremediable infringement of a substantial interest. As above indicated, the challenged FCC order is not a ruling on the merits of the tariffs. The complaint procedures of § 208 remain available as a means by which Petitioners can challenge the lawfulness of those rates.
 
 Conclusion
 
 23
 Because this court lacks jurisdiction to review an FCC order refusing to reject or to suspend and investigate a tariff filing, the petition for review is dismissed.
 
 
 
 *
 Honorable Howard T. Markey, Chief Judge of the United States Court of Customs and Patent Appeals, sitting by designation
 
 
 [1]
 Within the genre of private line services, AT&T offers:
 Telegraph grade private line services used for teletypewriter, telemetering and low speed data transmission applications;
 Voice grade channels used for oral communications and for high speed data transmission, telephoto and facsimile transmission;
 Audio and video transmission services; and
 High speed channels for data processing.
 
 
 [2]
 47 U.S.C. § 201(b) provides in pertinent part:
 (b) All charges, practices, classifications, and regulations for and in connection with such communication service, shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful.... The Commission may prescribe such rules and regulations as may be necessary in the public interest to carry out the provisions of this chapter.
 
 
 [3]
 Section 61.38 requires that tariffs be justified by supplying as part of the tariff filing, the cost of providing the tariffed service
 
 
 [4]
 § 208 provides in pertinent part:
 § 208. Complaints to Commission; investigations
 Any person ... complaining of anything done or omitted to be done by any common carrier subject to this chapter, in contravention to the provisions thereof, may apply to said Commission by petition.... If ... there shall appear to be any reasonable ground for investigating said complaint, it shall be the duty of the Commission to investigate the matters complained of in such manner and by such means as it shall deem proper.
 
 
 [5]
 § 204 provides in pertinent part:
 § 204. Hearings on new charges; suspension pending hearing; refunds
 (a) Whenever there is filed with the Commission any new or revised charge, classification, regulation, or practice, the Commission may either upon complaint or upon its own initiative without complaint, upon reasonable notice, enter upon a hearing concerning the lawfulness thereof; and pending such hearing and the decision thereon the Commission ... may suspend the operation of such charge, classification, regulation, or practice, in whole or in part....
 
 
 [6]
 That provision provides in pertinent part:
 (8) Commission to determine lawfulness of new rates; applicability to common carrier by railroad; suspensions; accounts; hearing and basis of decision
 (a) Whenever a schedule is filed with the Commission by a common carrier by railroad stating a new individual or joint rate, fare, or charge, or a new individual or joint classification, regulation, or practice affecting a rate, fare, or charge, the Commission may, upon the complaint of an interested party or upon its own initiative, order a hearing concerning the lawfulness of such rate, fare, charge, classification, regulation, or practice.