**DELMARVA POWER & LIGHT COMPANY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

**Old Dominion Electric Cooperative, et al., City of Newark, Delaware, the Town of Smyrna, Delaware, and the Mayor and Council of the City of New Castle, Delaware, Intervenors.**

**The CITY OF NEWARK, DELAWARE, the Town of Smyrna, Delaware, and the Mayor and Council of the City of New Castle, Delaware, Petitioners,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

**Delmarva Power and Light Company, Old Dominion Electric Cooperative, et al., Intervenors.**

**DELMARVA POWER & LIGHT COMPANY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

**Nos. 80–2102, 80–2585, 81–1089.**

United States Court of Appeals, District of Columbia Circuit.

Argued 12 Nov. 1981.

Decided 19 Feb. 1982.

---

Robert J. Glasser, New York City, for Delmarva Power & Light Co., petitioner in No. 80–2102 and intervenor in No. 80–2585.

John Wyeth Griggs, Washington, D.C., with whom Wallace L. Duncan and J. Cathy Lichtenberg, Washington, D.C., were on the brief for the City of Newark, Delaware, et

al., petitioners in No. 80–2585 and intervenors in No. 80–2102.

Joshua Z. Rokach, Federal Energy Regulatory Commission, Washington, D.C., with whom Jerome Nelson, Acting Gen. Counsel and Sol., Federal Energy Regulatory Commission, was on the brief for respondent.

Kristina Nygaard, Federal Energy Regulatory Commission, Washington, D.C., also entered an appearance for respondent.

Nathan Huff Miller, Harrisonburg, Va., entered an appearance for Old Dominion Elec. Cooperative, et al., intervenors in Nos. 80–2102 and 80–2585.

Before WILKEY and MIKVA, Circuit Judges, and MARKEY,* Chief Judge, United States Court of Customs and Patent Appeals.

Opinion for the Court filed by Circuit Judge WILKEY.

WILKEY, Circuit Judge:

In this action petitioner-intervenor Delmarva Power & Light Company ("Delmarva") and intervenor-petitioners City of Newark, Town of Smyrna, and Mayor and Council of the City of New Castle, all of Delaware ("the municipalities"), seek review of three orders of respondent Federal Energy Regulatory Commission ("FERC" or "the Commission"). However, we find FERC's actions here to be nonreviewable, and accordingly dismiss the petitions of Delmarva and the municipalities.

## I. BACKGROUND

On 30 April 1980 Delmarva filed a proposed rate increase, which would be implemented in two phases.[1] The Phase I increase was to reflect both Delmarva's generally higher operating costs due to inflation (this part of the increase is called a new "tariff"), and the capital costs and operating expenses associated with the anticipated opening of Delmarva's Indian River Unit # 4 generating plant. The Phase II increase was to reflect the costs and expenses associated with the opening of the Salem Unit # 2 generating plant.[2]

The three orders issued by FERC in response to Delmarva's filing were promulgated on 30 June, 22 August, and 1 October 1980, respectively.

The 30 June order[3] accepted Delmarva's rates for filing and suspended the effective dates of the rate increases. The new tariff was suspended for one day, from the proposed effective date of 1 July 1980 to 2 July 1980. The balance of the Phase I rate increase was suspended for three months from the in-service date of Indian River # 4. The Phase II increase was suspended for five months from the in-service date of Salem # 2. The 30 June order also set the entire filing matter for hearing.

The 22 August order[4] denied the rehearing Delmarva had requested[5] on the 30 June order.

The 1 October order[6] denied Delmarva's motion for a stay of the suspensions,[7] which motion Delmarva had filed following the Commission's 22 August order. However, the 1 October order also modified the 30 June suspensions, leaving the suspension of the Phase II increase in place, but requiring that the Phase I suspension begin running on 1 July for five months rather than for

---

* Sitting by designation pursuant to 28 U.S.C. § 293(a) (1976).

1. The statute governing the filing, acceptance, and suspension of utility rates in this case is § 205 of the Federal Power Act, codified as amended at 16 U.S.C. § 824d (Supp. III 1979). Each challenge by petitioners to FERC's orders in this case is an assertion that § 205, or regulations or orders issued thereunder, have been violated, but our general finding of nonreviewability makes unnecessary any lengthy discussion and analysis of the passages allegedly infringed.

2. Joint Appendix (J.A.) at 7.

3. Id. at 401.

4. Id. at 434.

5. Id. at 410.

6. Id. at 462.

7. Id. at 439.

three months from the in-service date of Indian River # 4.

## II. PETITIONERS' CHALLENGES TO FERC's ORDERS

*Delmarva's* argument against FERC is twofold. First, it challenges as "unreasonable" the 1 October order lengthening the Phase I suspension period since "the rationale for such action is flatly inconsistent with the Commission's prior Orders . . . ."[8] Second, it challenges as unlawful "those portions of the Commission's Orders which suspend Phase II of Delmarva's new rate filing for longer than the five months maximum established by the Federal Power Act . . . ."[9]

*The municipalities* attack the Commission's 30 June order accepting Delmarva's rates for filing and, in the alternative, argue that if we decline to require the rejection of Delmarva's filing, we should set aside the order of 1 October and affirm the two earlier orders. The municipalities challenge Delmarva's filing—and thus the Commission's acceptance of the filing—as violative of the Federal Power Act since (1) it did not state plainly the time when the rate increases would go into effect; (2) it sought voluntarily to postpone implementation of a filed rate; and (3) it sought to include in the rate base a utility plant, Salem Unit # 2, which was not yet "used and useful" for service to ratepayers.[10]

The municipalities' alternative argument that the 1 October order is "clearly erroneous" and should be set aside is based on two allegations: first, that the Commission based its order on the incorrect assumption that the municipalities were party to agreements with Delmarva reserving to the utility the right to file an early rate increase, and second, that even if they were party to these agreements the Commission misinterpreted them.[11]

None of Delmarva's or the municipalities' challenges, however, renders reviewable the orders issued by FERC.

## III. NONREVIEWABILITY OF FERC's ORDERS

### A. *Controlling Cases*

The framework within which questions of the reviewability or nonreviewability of agency ratemaking and filing acceptance must be analyzed is laid out in *Papago Tribal Utility Authority v. FERC*[12] ("*Papago*"), *Aeronautical Radio, Inc. v. FCC*[13] ("*Aeronautical Radio*"), *Southern Railway Co. v. Seaboard Allied Milling Corp.*[14] ("*Southern Railway*"), and *Arrow Transportation Co. v. Southern Railway Co.*[15] ("*Arrow Transportation*"). Together these four cases, two from this court and two from the Supreme Court, lead ineluctably to our conclusion that the Commission's orders here are not reviewable.

Most on point is *Papago*. That case involved, as ours does, a challenge to a Commission decision accepting a rate filing by an electric power wholesaler. Petitioner, a customer of the wholesaler, alleged that the rate filing had "*patent defects* requiring rejection *on its face*."[16] Nonetheless, the court held:

The reviewability of an order must . . . be determined by reference to its practical function and consequences in the rele-

8. Brief for Petitioner-Intervenor at viii.

9. *Id.*

10. Brief for Intervenors-Petitioners at viii, 8, 16.

11. *Id.* at 19–21.

12. 628 F.2d 235 (D.C.Cir.), *cert. denied,* 449 U.S. 1061, 101 S.Ct. 784, 66 L.Ed.2d 604 (1980). *Papago's* companion case, which reached a similar holding but included no exposition, was *Earth Resources Co. v. FERC,* 628 F.2d 234 (D.C.Cir.1980).

13. 642 F.2d 1221 (D.C.Cir.1980), *cert. denied,* 451 U.S. 920, 976, 101 S.Ct. 2059, 68 L.Ed.2d 357 (1981).

14. 442 U.S. 444, 99 S.Ct. 2388, 60 L.Ed.2d 1017 (1979).

15. 372 U.S. 658, 83 S.Ct. 984, 10 L.Ed.2d 52 (1963).

16. 628 F.2d at 238 (emphasis in original).

vant statutory scheme. We must ask first whether the order is final; second whether, if unreviewed, it would inflict irreparable injury on the party seeking review; and third whether judicial review at this stage of the administrative process would invade the province reserved to the discretion of the agency.[17] The court concluded that acceptance of a rate filing was not final, that petitioner would not suffer irreparable injury in the absence of review, and that review would be an invasion of FERC's province. The court cited extensively from *Arrow Transportation* and *Southern Railway*, and held the *Sierra-Mobile* doctrine inapplicable.[18]

In *Aeronautical Radio* we held that the FCC's decision to accept a tariff filing from AT&T was similarly nonreviewable. Petitioners there claimed that one of the FCC's rules required supporting economic data to be filed with proposed tariff changes and that the rule's waiver by the FCC was an abuse of discretion. However, the court stated:

> The decision of the FCC to accept the AT&T tariff filing satisfies the [three-part] *Papago* criteria of unreviewability. The acceptance is non-final because it is the initiation of an administrative proceeding. The [FCC] merely accepted the tariff and did not rule on the lawfulness of the rates to be paid .... The act of acceptance creates no irreparable harm because investigatory hearings are available for examination of the filing on the merits.... Finally, the decision to accept the filing is reserved to [FCC] discretion because it is a "necessary adjunct to the unreviewable decision to suspend and investigate."[19]

Specifically with regard to the waiver decision by the FCC the court held that, since the supporting economic data are required

by rule primarily to aid the FCC in exercising its discretion as to investigation and suspension of tariff filings, the agency's decision to waive the requirement could not provide a basis for this court to mandate rejection of the tariff filing. The benefits to parties besides the FCC were held to be secondary, and the agency was held to have authority to relax, modify, or waive its filing requirements. Moreover, such action was held nonreviewable except upon a showing of "substantial prejudice" to the complaining party, and, "[g]iven the complaint remedy under the Communications Act, no substantial prejudice of an irreparable nature exists in this case."[20] In the opinion for the court on petition for rehearing, Judge Robb stated that, while the agencies in *Papago* and *Southern Railway* offered broader protections for customers and followed more elaborate procedures, these were "differences without a distinction." Though the only resort for petitioners in *Aeronautical Radio* was the complaint procedure of the Communications Act, "this remedy alone suffice[d] to render the FCC order non-final and unreviewable."[21]

Since in both *Papago* and *Aeronautical Radio* we drew heavily from the Supreme Court decisions in *Southern Railway* and *Arrow Transportation*, a short discussion of the latter two cases is merited. In *Southern Railway* the Supreme Court held that an order issued by the ICC declining to suspend or investigate filed rates was non-reviewable, despite allegations by petitioners that the rates were "patent[ly] illegal[ ]."[22] The opinion stressed the availability elsewhere of "carefully designed and detailed procedures"[23] for petitioners, the lack of any major "final consequences"[24] for petitioners in the Commission's decision, and the "disruptive practical conse-

---

**17.** *Id.* at 239.

**18.** This doctrine is discussed at p. 595 *infra.*

**19.** 642 F.2d at 1234.

**20.** *Id.* at 1235 (footnote omitted).

**21.** *Id.* at 1248.

**22.** 442 U.S. at 451, 99 S.Ct. at 2392.

**23.** *Id.* at 456, 99 S.Ct. at 2395.

**24.** *Id.* at 454–55, 99 S.Ct. at 2394.

quences"[25] of "judicial interference."[26] With respect to the latter consideration, the Court noted, "Judicial review would once again undermine the [ICC's] primary jurisdiction by bringing the courts into the adjudication of the lawfulness of rates in advance of administrative consideration."[27]

In *Arrow Transportation* the Supreme Court held that the ICC had sole and exclusive power to suspend filed rates, and that therefore the courts could not do so pending a hearing by the ICC. The Court reached this conclusion for two reasons. First, it found this result to be dictated by Congress in the Interstate Commerce Act. Note on this point that we held in *Papago* that "the scheme of the Federal Power Act is identical to the Interstate Commerce Act. This court has therefore held, on the strength of *Arrow Transportation* . . . that we have no power to review orders concerning suspension of rates under § 205(e) of the Act."[28] *Arrow Transportation* found secondly that its conclusion, from legislative intent, of nonreviewability was "buttressed by a consideration of the undesirable consequences"[29] of a conclusion to the contrary, which "would create the hazard of forbidden judicial intrusion into the administrative domain."[30]

B.  *Applicability of* Papago, Aeronautical Radio, Southern Railway, *and* Arrow Transportation *to this Case*

■ From the four cases just discussed, we conclude that the "practical function and consequences"[31] of judicial intervention will determine the reviewability of a FERC order, whether the challenge involves acceptance or suspension of filed rates. In

determining the function and consequences of review we shall weigh (1) the finality of the order signed, (2) the irreparability of injury to petitioner if review is refused, and (3) the degree to which review will invade a province reserved to agency discretion. The imminence of an administrative hearing thus has triple significance. The stage of proceedings at which an order is issued is important since it bears on finality, and the availability of other remedies is important since it bears on both the irreparability of harm and the degree to which Congress intended to leave matters at the agency's discretion. All of these principles dictate that we hold the Commission orders challenged in this case to be nonreviewable.

1.  *The municipalities' claims*

■ The municipalities first challenge FERC's acceptance of Delmarva's filings. But, as we pointed out in *Papago*,

Acceptance of a filing, coupled with scheduling of a hearing, is the *initiation* of an administrative proceeding; judicial review properly follows the *conclusion* of the proceeding. . . . [T]he same issues now posed for summary disposition will also constitute the principal issues in the full administrative hearing.[32]

*Papago* also pointed out that the Commission might itself obviate an injury to the parties if allowed to complete its proceedings or that, conversely, new legal issues might arise in the proceedings' course. In either event, we would be " 'decid[ing] hypothetical questions and wast[ing] appellate resources by intervening at this stage.' "[33] In *Papago* we noted that "[t]he decision [to

25.  *Id.* at 457, 99 S.Ct. at 2395.

26.  *Id.* at 460, 99 S.Ct. at 2397.

27.  *Id.*

28.  628 F.2d at 242 n.19. "§ 205(e) of the Act" is the relevant suspension provision in today's case, too; it is codified at 16 U.S.C. § 824d(e) (1976). Cited in *Papago* as authority for the proposition that § 205(e) rate suspension orders are normally nonreviewable were *Municipal Light Bds. v. FPC*, 450 F.2d 1341 (D.C.Cir. 1971), *cert. denied*, 405 U.S. 989, 92 S.Ct. 1251, 31 L.Ed.2d 445 (1972), and K. Davis, Adminis-

trative Law Treatise § 28.19 at 966 (Supp. 1970).

29.  372 U.S. at 669, 83 S.Ct. at 990.

30.  *Id.* at 670, 83 S.Ct. at 990.

31.  *Papago*, 628 F.2d at 239.

32.  *Id.* at 240 (emphasis in original).

33.  *Id.* (quoting *Green v. Department of Commerce*, 618 F.2d 836, 839 (D.C.Cir.1980)).

accept a filing] is quickly made, as the [statute] demands,"[34] and emphasized that the matter there, too, had been set for hearing.[35] Thus, "the decision to accept a rate filing, in contrast [to hearing dispositions], is undeniably interlocutory."[36]

The court in *Papago* also determined that the petitioner challenging FERC's rate-filing acceptance there would "suffer no irreparable injury if denied immediate judicial review,"[37] since excess payments would be refunded if the Commission did not find the rates to be just and reasonable.

> Congress devised the suspension and refund provisions of Section 205(e) to protect utility customers from the interlocutory consequences of an unjust or unreasonable rate increase, and this court has neither reason nor authority to augment those protections by holding that FERC's order accepting the rate filing is reviewable at this time.[38]

All four major cases emphasized the significance of the availability of alternative remedies for their respective petitioners.[39] The municipalities in the case before us have available the same alternative remedies we discussed in *Papago*, and are protected by FERC's suspension of the rates.

*Papago's* third conclusion was that review of the Commission's acceptance of the rates filed would invade a province reserved to the discretion of the agency in a manner violative of *Southern Railway* and *Arrow Transportation*. Inasmuch as petitioner's claim in *Papago* is indistinguishable from the municipalities' claim here, we reach the same conclusion today.[40] And, to the ex-

tent that the orders are challenged as being inconsistent with the Commission's rules, *Papago* pointed out that FERC acceptance requires only "substantial compliance" with those rules, "which can best be judged by the Commission in the light of its own needs."[41] Thus the "agency's choice of procedure—whether to dispose of a case summarily or to schedule a hearing—is not a proper concern of the courts in the absence of substantial prejudice to a party."[42] "Since an agency is permitted to relax, modify, or waive its filing requirements, . . . FERC owes no one the *duty* to reject a rate filing, even if it is patently invalid."[43]

The challenge in *Papago* was that FERC should not have accepted the filing because its "*patent defects* requir[ed] rejection *on its face.*"[44] We must, a fortiori, reject the weaker challenges by the municipalities here: that the filing ought not to have been accepted because, variously, its statement of the effective date was faulty, it called for voluntary postponement of the date of rate implementation, and it included in the rate base a plant not yet "used and useful." That is, the municipalities' allegations that the date specification was in one way or another inadequate and the rate base incorrect are—even if true—clearly less problematic than an allegation that the filing was "patent[ly] defect[ive]." Further, however ambiguous the filing was initially, its effect is quite clear now, and no purpose would be served and nothing would be gained by invalidating the filings and orders now before us and beginning the process anew. And the municipalities' contention that the

---

34. 628 F.2d at 240 (footnote omitted).

35. *Id.* at 238 n.8.

36. *Id.* at 240.

37. *Id.* at 240.

38. *Id.* at 241 (footnote omitted).

39. Indeed, *Aeronautical Radio* found that the statutory complaint procedure "alone suffices to render the [agency] order non-final and unreviewable." 642 F.2d at 1248.

40. *See, e.g.,* note 28 *supra.*

41. 628 F.2d at 241–42. *See also American Farm Lines v. Black Ball Freight Serv.,* 397 U.S. 532, 90 S.Ct. 1288, 25 L.Ed.2d 547 (1970); *Aeronautical Radio,* 642 F.2d at 1234–35. The municipalities rely on FERC's own rules for their allegations of faulty date specification and violations of the "used and useful" concept. Brief for Intervenors-Petitioners at 9–12, 13–14.

42. 628 F.2d at 242.

43. *Id.* at 247 (citation omitted) (emphasis in original).

44. *Id.* at 238 (emphasis in original).

filing should not have been accepted because a plant not "used and useful" was included in the rate base would, as much as the proposed inquiry in *Papago*, require an intimate and disruptive judicial inquiry into the wisdom of FERC's actions in its own province.

■ Having declined to review FERC's filing acceptance, we turn to the municipalities' second, alternative request that we reject the 1 October order as "clearly erroneous." But this seems indistinguishable from the request in *Papago* that the filing be rejected as "patent[ly] defect[ive]." We note, again, that the imminence of a future hearing, and the alternative remedy it provides, undercut both the finality of the Commission's decision and the irreparability of its harm. Moreover, the municipalities ask us here to decide whether they were parties to certain agreements and to interpret those agreements. Both are determinations of fact which can be handled as well, and undoubtedly better, by the Commission in its hearing. Such fact-finding is squarely within the province of the agency. As a general rule, those disputes rooted in factual rather than legal disagreements are most quintessentially those which the courts should leave to the Commission, whose experience and expertise will make it the better detective. As we said in *Papago*, "Replacing one comprehensive judicial review proceeding [*i.e.*, a hearing], based on a full record, with piecemeal proceedings based almost solely on a bare rate filing would be a poor technique of judicial administration, with unfortunate consequences for courts, agencies, and litigants as well."[45] At any rate, "[t]he agency's choice of procedure—whether to dispose of a case summarily or to schedule a hearing—is not a proper concern of the courts in the absence of substantial prejudice to a party."[46]

**45.** *Id.* at 240.

**46.** *Id.* at 242.

**47.** Brief for Petitioner-Intervenor at viii.

**48.** *See, e.g.*, note 28 and accompanying text *supra*.

**49.** *See* pp. 591 and 593–594 *supra*.

### 2. *Delmarva's claims*

■ The principles of *Papago* and the other cases apply a fortiori to Delmarva's allegations, too. The utility claims, first, that the 1 October order lengthening the Phase I suspension period is "unreasonable" since "the rationale for such action is flatly inconsistent with the Commission's prior Orders," and, second, that "portions of the Commission's Orders . . . suspend Phase II of Delmarva's new rate filing for longer than the five months maximum established by the Federal Power Act . . . ."[47]

Again, even assuming that the 1 October order was "inconsistent" with the other orders, and even if this inconsistency created a suspicion that the new order might be "unreasonable," the length of a rate suspension is a decision utterly inappropriate for judicial review and manifestly within the agency's province.[48] We discussed earlier[49] when agencies may modify their own rules, and it follows that their modification of orders is generally permissible, too. Nor, of course, is the Commission's action here any more final or the harm to Delmarva any more irreparable than is any rate suspension. Petitioner here is indistinguishable from any other public utility whose rates have been suspended.

■ Delmarva's second allegation is that "portions" of the orders involved here would result in a suspension longer than what is statutorily permissible.[50] At first glance it might seem that this allegation is rather different from the others so far discussed, since it asserts a quite specific transgression by FERC of a statute. The statute involved is narrow and non-technical, and with the proper facts before us, it would be an easy matter for a court to determine whether there had been a viola-

**50.** Under § 205(e) of the Federal Power Act (16 U.S.C. § 824d(e) (1976)), "the Commission . . . may suspend the operation of [a rate] schedule and defer the use of such rate . . . , but not for a longer period than five months beyond the time when it would otherwise go into effect . . . ."

tion. It is possible that under some circumstances no fact-finding or technical determinations would be necessary, so that only pure questions of law would be presented. In such a case our review would infringe very little or not at all on the agency's province. However, in the case before us the facts bearing on the interpretation of the filing and of the orders are unclear and disputed, and these facts will bear heavily on determining whether the statute was violated. An investigation of these matters would be the sort of judicial intrusion the Supreme Court has warned us against, and would entangle us in factual questions better left for FERC's resolution at its hearing. Moreover, it is not essential that the alleged violation be reviewed now, for the order is not final and the harm alleged not irreparable. Thus we find Delmarva's claim to raise no reviewable issues.

C. *Jurisdictional Challenges*, Connecticut Light & Power, *and the* Sierra-Mobile Doctrine

It should be made clear at this point that what we hold nonreviewable today does not make all challenges to acceptances by FERC of filed rates nonreviewable, any more than *Papago, Aeronautical Radio, Southern Railway,* or *Arrow Transportation* implied such a result. Were it, for instance, alleged that acceptance of *any* rate filing was, for some reason, "clearly outside the bounds of FERC's statutory authority," [51] then judicial review might be "necessary to ensure that such orders do not overstep the[se] bounds . . . ." [52] Review would be permissible under these circumstances because, while "courts may not independently appraise the reasonableness of rates, no

such appraisal is involved in inquiring whether the [agency] has overstepped the bounds of its authority." [53] Thus, "[i]n such a case immediate review might not invade the province of the agency." [54] But no such allegation is made here, nor does it seem possible to discern such a violation under the facts of this case.

Similarly, were it alleged that the Commission had given no reason for an acceptance or suspension, then review might be proper under *Connecticut Light & Power Co. v. FERC.* [55] But no such allegation is made, nor, again, does it seem likely under the facts before us that such an allegation *could* be made. It is one thing to require that a rationale be given, it is something else to examine the merits of the rationale so expressed. At oral argument Delmarva claimed that the reasons given by FERC were illogical and inconsistent, and that giving illogical and inconsistent reasons was tantamount to giving no reasons at all. However, we cannot see how reviewing the consistency and logic of an order is anything but reviewing its merits—especially in this case, where doubt exists that the Commission's actions lack consistency and logic.

Nor, finally, is this a case which falls within the *Sierra-Mobile* doctrine, [56] for that doctrine requires an allegation that a utility's filing violated an underlying contractual obligation. The dispute here contains no such allegation. Indeed, on this issue we again find *Papago* to be controlling. There, in a substantially identical situation, we found the *Sierra-Mobile* doctrine to be inapplicable. [57]

---

51. *Papago,* 628 F.2d at 243 n.20.

52. *Trans Alaska Pipeline Rate Cases,* 436 U.S. 631, 638 n.17, 98 S.Ct. 2053, 2058 n.17, 56 L.Ed.2d 591 (1978).

53. *Id.* at 639 n.17, 98 S.Ct. at 2059 n.17.

54. *Papago,* 628 F.2d at 243, n.20. This was conceded by the Commission at oral argument.

55. 627 F.2d 467 (D.C.Cir.1980).

56. This doctrine was born of two cases decided by the Supreme Court in 1956: *FPC v. Sierra Pac. Power Co.,* 350 U.S. 348, 76 S.Ct. 368, 100 L.Ed. 388 (1956), and *United Gas Pipe Line Co. v. Mobile Gas Serv. Corp.,* 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373 (1956). *See also Richmond Power & Light v. FPC,* 481 F.2d 490 (D.C.Cir.), *cert. denied,* 414 U.S. 1068, 94 S.Ct. 578, 38 L.Ed.2d 473 (1973).

57. 628 F.2d at 244–45.

## IV. CONCLUSION

We find the actions by FERC challenged here to be nonreviewable, and accordingly dismiss the petitions of both Delmarva and the municipalities.

*So ordered.*