682 F.2d 25
 AMERICAN BROADCASTING COMPANIES, INC., CBS Inc., National
Broadcasting Company, Inc., Petitioners,
v.
FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Respondents,
American Telephone & Telegraph Company, Intervenor.
 No. 350, Docket 81-4106.
 United States Court of Appeals,
Second Circuit.
 Argued March 18, 1982.
Decided May 27, 1982.
 
 Edward P. Taptich, Washington, D.C. (Joseph M. Kittner, Randolph J. May, McKenna, Wilkinson & Kittner, Washington, D.C., of counsel), for petitioners ABC, CBS and NBC.
 (Robert J. Kaufman, New York City, of counsel), for petitioner ABC.
 (Joseph DeFranco, Washington, D.C., of counsel), for petitioner CBS.
 (Howard Monderer, Washington, D.C., of counsel), for petitioner NBC.
 C. Grey Pash, F. C. C., Washington, D.C. (Stephen A. Sharp, Gen. Counsel, Daniel M. Armstrong, Associate Gen. Counsel, L. Andrew Tollin, Counsel, F. C. C., Washington, D.C., of counsel), for respondent F. C. C.
 James H. Laskey, Dept. of Justice, Washington, D.C. (William F. Baxter, Asst. Atty. Gen., Robert B. Nicholson, Dept. of Justice, Washington, D.C., of counsel), for respondent U. S. A.
 Jules M. Perlberg, Chicago, Ill. (David J. Lewis, Sidley & Austin, Washington, D.C., Alfred A. Green, Francine J. Berry, New York City, Raymond F. Burke, Bedminster, N. J., of counsel), for intervenor A. T. & T.
 Before MESKILL and KEARSE, Circuit Judges, and METZNER, District Judge.*
 MESKILL, Circuit Judge:
 
 
 1
 Petitioners American Broadcasting Companies, Inc., CBS Inc. and National Broadcasting Company, Inc. ("Networks") seek review of an order of the Federal Communications Commission ("FCC"), American Telephone and Telegraph Co., 86 F.C.C.2d 956 (1981) (hereinafter "Special Permission Order "), granting American Telephone & Telegraph Company's ("AT&T") special permission request to allow tariff revisions to take effect early and declining to reject or to suspend and investigate AT&T's tariff filing. The Networks contend that the FCC violated the Administrative Procedure Act ("APA") in granting AT&T's special permission request and violated sections 201(b) and 204(a) of the Communications Act,[1] 47 U.S.C. §§ 201(b), 204(a), in refusing to undertake pre-effectiveness review of the proposed tariffs. We lack jurisdiction to review the FCC's decision to forego pre-effectiveness review. ABC, Inc. v. FCC, 662 F.2d 155 (2d Cir. 1981) (hereinafter "ABC I "). Further, we find no violation of the APA in the FCC's grant of AT&T's special permission request. Accordingly, we dismiss the petition in part and deny it in part.
 
 BACKGROUND
 
 2
 AT&T, a telecommunications common carrier that offers private line services, Message Telecommunications Services (MTS) and Wide Area Telecommunications Services (WATS), is subject to FCC regulation under the Communications Act, 47 U.S.C. §§ 201 et seq. The actual setting of carrier rates has often involved a two-step process: first, the FCC approves the carrier's overall rate of return; and second, the carrier files a tariff revision designed to produce the approved rate of return. See generally ABC I, 662 F.2d at 156.
 
 
 3
 On April 6, 1981, after almost two years of hearings, the FCC approved an increase in AT&T's overall rate of return to 12.75 percent. American Telephone and Telegraph Co., 86 F.C.C.2d 221 (1981) (hereinafter "Rate of Return Decision "), appeal filed, United States v. FCC, No. 81-1751 (D.C.Cir. filed July 6, 1981).[2] The FCC announced the new rate of return in a news release on April 6, 1981 and issued the text of the Rate of Return Decision to the public on May 7. The Rate of Return Decision appeared in the Federal Register on June 11. 46 Fed.Reg. 30,818 (1981). In discussing the rate of return increase the FCC noted:
 
 
 4
 The recent record in this Docket has demonstrated the volatile economic and financial conditions which have occurred during the course of this proceeding .... After considering the substantial increases which have occurred in A. T. & T.'s costs of common stock equity and embedded debt, and the volatility of current economic and financial conditions, we believe that it is imperative that A. T. & T. be permitted to realize the new rate of return as soon as possible. Accordingly, as in our prior decision in Docket No. 20376, 57 F.C.C.2d at 973, we shall permit A. T. & T. to effect tariff revisions which are designed to produce revenues necessary to earn the new rate of return on not less than thirty days notice from the filing of its tariffs.
 
 
 5
 Rate of Return Decision, 86 F.C.C.2d at 250 (emphasis in original).
 
 
 6
 On April 10, 1981, AT&T filed tariff revisions designed to produce the 12.75 percent rate of return. AT&T Transmittal Nos. 13703-13708. AT&T proposed, inter alia, a sixteen percent increase for its private line services,[3] submitted twenty-six volumes of supporting data pursuant to 47 C.F.R. § 61.38 and, in compliance with 47 C.F.R. § 61.58, notified customers of the proposed rate changes. AT&T concurrently requested special permission to make the rates effective five days after the effective date of the Rate of Return Decision instead of on ninety days notice as provided by 47 U.S.C. § 203(b)(1).[4]
 
 
 7
 On April 23, the Acting Chief of the FCC's Common Carrier Bureau granted AT& T's special permission request for private line and WATS services, allowing the rate increases to take effect on thirty days notice, or five days after release of the text of the Rate of Return Decision, whichever occurred later. The rationale for granting the request was the inadequacy of AT&T's earnings level and its urgent need for rate relief. J.App. at 113-14.
 
 
 8
 In response, the Networks filed an "Emergency Application for Review." On May 5, the FCC upheld the Bureau Chief's decision. American Telephone and Telegraph Co., FCC 81-214 (adopted May 5, 1981). J.App. at 234-40. The FCC noted that members of the public who objected to the tariffs could seek post-effectiveness review under 47 U.S.C. §§ 206-209. Id. at 4; J.App. at 237. The FCC also observed that while "(t)he statutory scheme affords those who object to a tariff as unlawful ample remedies to seek refunds or damages, ... the carrier can never recoup revenues lost because of delays attributable to the agency or protesting parties." Id. at 1; J.App. at 234.
 
 
 9
 On May 13, a day before the tariffs were due to take effect, the Bureau Chief, noting the need to clarify some aspects of the AT&T's filing, deferred the effective date of the tariffs until July 9, pending receipt of the appropriate cost information from AT&T. He indicated, however, that upon receipt of the data and completion of the staff's analysis, the Bureau would "consider allowing advancement of the effective date (of the tariff filings)." Id. at 273. Following its filing of tariff revisions and submission of data, AT&T renewed its request for special permission to advance the effective date of the tariffs.
 
 
 10
 On June 25, the FCC adopted and released the order under review. American Telephone and Telegraph Co., 86 F.C.C.2d 956 (1981). Reiterating its opinion that " '(i)t is imperative that AT&T be permitted to realize the new rate of return as soon as possible,' " id. at 961, the FCC decided that the most appropriate procedure was to suspend the tariff revisions for one day, institute an investigation into the "discrete problems" it perceived in the filing and impose "an accounting order on all rate increases to facilitate possible refunds," id. at 965. The FCC maintained that this procedure would protect ratepayers if the rate increases were later determined to be excessive and would, at the same time, enable AT&T to realize revenues at the level which the FCC had determined to be necessary and appropriate in the Rate of Return Decision. Finally, the FCC granted AT&T special permission to make the tariff revisions effective by June 28.
 
 
 11
 In the Special Permission Order, the FCC addressed a number of claims presented by the Networks. The Commission first rejected a procedural argument raised by the Networks that section 553(d) of the APA[5] barred the general rate increase from taking effect until thirty days after publication of the Rate of Return Decision in the Federal Register. The FCC found the thirty-day requirement inapplicable holding that publication in the Federal Register was not mandatory. The FCC noted that "whatever impact the requirements of the APA may have on the effectiveness of Commission orders, they do not govern carrier-initiated tariff filings, which become effective of their own accord absent rejection or suspension by the Commission." 86 F.C.C.2d at 960-61. Moreover, the FCC pointed out that, in any event, because "(i)t is clear beyond doubt that the Networks have had actual notice of the Rate of Return decision," section 552(a)(1) of the APA precluded them from "rais(ing) the nonpublication of the Rate of Return decision as a bar to the effectiveness of rates filed in response to it." Id. at 961 n.14.[6]
 
 
 12
 Further, as in American Telephone and Telegraph Co., 86 F.C.C.2d 689 (1981), petition dismissed sub nom. ABC, Inc. v. FCC, 662 F.2d 155 (2d Cir. 1981), the FCC declined to undertake pre-effectiveness review of the tariffs on a service-by-service basis, deciding to "rely( ) instead on ongoing proceedings, to ultimately determine the lawfulness of service-by-service rates ... as well as (on) investigations of individual tariff filings ... and finally, (on) the complaint provisions of the Act. See, 47 U.S.C. §§ 206-209." 86 F.C.C.2d at 962.[7] The FCC also summarily rejected a claim raised by the Networks that because AT&T failed to submit cost data in support of the tariff filings on a service-by-service basis the tariff filings were defective and in violation of section 201(b) of the Communications Act.[8] Id. at 960.
 
 
 13
 AT&T refiled its tariff revisions on June 26, 1981. The Networks then filed a motion seeking an emergency stay of the Special Permission Order. American Telephone and Telegraph Co., FCC 81-288 (adopted June 29, 1981). J.App. at 484. In denying the motion, the FCC once again addressed and rejected the various arguments raised by the Networks in their earlier pleadings. The Commission did "not find it patently unlawful for a carrier to file tariffs anticipating a newly prescribed rate of return where the decision to raise the prescribed rate ha(d) been made and publicly announced." Id. at 486. The FCC also dismissed the argument that the APA required Federal Register publication before the Rate of Return Decision could become effective, noting that even if the APA did apply, "the 30 day notice period mentioned in Section 553(d) is not mandatory, but may be abbreviated 'for good cause shown and published with the rule.' 5 U.S.C. § 553(d)(3)." Id. The FCC pointed out that the Rate of Return Decision had made this "good cause" finding by recognizing "the need for expedition of this case and (by) stat(ing) that the new rate of return should become effective 'as soon as possible.' " Id.
 
 
 14
 The Networks then filed an emergency motion for a stay in this Court, which was denied. The tariffs took effect on June 28, 1981.
 
 DISCUSSION
 
 15
 In their petition for review, the Networks present two claims rejected by the FCC in the Special Permission Order: (1) that the FCC was required under sections 201(b) and 204(a) of the Communications Act to undertake pre-effectiveness review of AT&T's tariff filing; and (2) that sections 552(a)(1)(D) and 553(d) of the APA, 5 U.S.C. §§ 552(a)(1)(D) & 553(d), prevented the Rate of Return Decision from taking effect until thirty days after publication in the Federal Register, and therefore the FCC was without discretion to allow early effectiveness of the tariffs.
 
 A. Pre-effectiveness Review
 
 16
 The Networks contend that the FCC violated sections 201(b) and 204(a) of the Communications Act by failing to undertake pre-effectiveness review of AT& T's tariff filing. We dismiss this claim for lack of jurisdiction.
 
 
 17
 Under 28 U.S.C. § 2342 the jurisdiction of Courts of Appeals is limited to review of final decisions of the FCC.[9] As we recently held in ABC I, 662 F.2d at 159, "this court lacks jurisdiction to review an FCC order refusing to reject or to suspend and investigate a tariff filing." A decision by the FCC to forego pre-effectiveness review is not an adjudication as to the lawfulness of tariff rates, but rather constitutes an exercise of the FCC's discretionary authority under section 204(a) of the Communications Act to allow tariffs to take effect without suspension and investigation.[10] "That exercise constitutes a preliminary decision within the Commission's exclusive discretion. It does not result in a final order reviewable in this court." Id. at 157. See Aeronautical Radio, Inc. v. FCC, 642 F.2d 1221, 1234-35 (D.C.Cir.1980), cert. denied, 451 U.S. 920, 101 S.Ct. 1998, 68 L.Ed.2d 311 (1981); Papago Tribal Utility Authority v. Federal Energy Regulatory Commission, 628 F.2d 235, 239-40 (D.C.Cir.), cert. denied, 449 U.S. 1061, 101 S.Ct. 784, 66 L.Ed.2d 604 (1980).
 
 
 18
 We reject the Networks' claim that the FCC's refusal to conduct pre-effectiveness review falls within the so-called "TAPS exception" to the nonreviewability rule. Trans Alaska Pipeline Rate Cases, 436 U.S. 631, 638-39 n.17, 98 S.Ct. 2053, 2058-59 n.17, 56 L.Ed.2d 591 (1976) (hereinafter "TAPS"); see Delmarva Power & Light Co. v. Federal Energy Regulatory Commission, 671 F.2d 587, 595 (D.C.Cir.1982); ABC I, 662 F.2d at 159. In TAPS, 436 U.S. at 638-39 n.17, 98 S.Ct. at 2058-59 n.17, the Supreme Court recognized an exception to nonreviewability of nonfinal agency action. The exception was narrowly confined to claims that "the Commission has overstepped the bounds of its (statutory) authority." See Delmarva, 671 F.2d at 595; ABC I, 662 F.2d at 159. In ABC I, we held that in refusing to undertake pre-effectiveness review, the "FCC order neither construed nor applied § 201(b) ... (but) was merely an exercise of the FCC's discretionary authority to allow the rates to become effective." 662 F.2d at 159. In this case, the Networks seek to distinguish ABC I by asserting that the agency has interpreted section 204(a) of the Communications Act. This case is indistinguishable from ABC I for purposes of our analysis. Here, as in ABC I, the Networks petitioned the Commission to reject, or to suspend and investigate the tariff revisions because AT&T failed to provide cost data on a service-by-service basis. Further, in both cases the FCC refused to undertake pre-effectiveness review and thereby allowed the tariffs to take effect. As we stated unequivocally in ABC I, no issue of statutory interpretation is presented by the FCC's exercise of its discretionary authority under section 204(a) of the Communications Act to forego pre-effectiveness review. 662 F.2d at 159.
 
 
 19
 Alternatively, the Networks as well as respondent United States contend that the FCC's refusal to conduct pre-effectiveness review amounts to implied rulemaking and as such is subject to review. Their position, in short, is that by declining both in this case and in ABC I to undertake such review, the FCC has impliedly promulgated a rule that it will never review tariffs prior to implementation. We disagree. We cannot conclude from these two instances that the FCC has even expressed a policy that it will forego pre-effectiveness review. Certainly, we cannot say that the FCC has promulgated a formal rule to that effect.
 
 B. AT&T's Special Permission Request
 
 20
 The Networks argue that under sections 552(a)(1)(D) and 553 of the APA the Rate of Return Decision could not have become effective until thirty days following publication in the Federal Register and, therefore, that AT&T's tariffs, which were filed prior to that date, were facially invalid. The Networks conclude that the FCC was obligated to reject the tariffs and was without discretion under section 203(b)(2) of the Communications Act to shorten the ninety-day notice period of section 203(b)(1). The Networks assert in the alternative that even if the FCC was not obliged to reject the premature tariffs as facially invalid, it abused its discretion by shortening the notice period.
 
 
 21
 Again, before addressing the merits, we must determine whether this claim is reviewable. In essence, the Networks contend that the FCC exceeded its statutory authority by accepting tariff filings prior to thirty days following publication of the Rate of Return Decision in the Federal Register. This claim, which challenges the FCC's statutory authority falls within the TAPS exception and is therefore reviewable. See TAPS, 436 U.S. at 638-39 n.17, 98 S.Ct. at 2058-59 n.17; Delmarva, 671 F.2d at 595; Papago, 628 F.2d at 243-44 n.20. However, because we find that the APA did not require publication of the Rate of Return Decision in the Federal Register, the Networks' claim must necessarily fail.
 
 
 22
 The APA distinguishes between rules of "general applicability" and rules of "particular applicability." See 5 U.S.C. § 551(4). Under the APA, "substantive rules of general applicability" are required to be published in the Federal Register. 5 U.S.C. § 552(a)(1)(D). Further, section 553(d) provides in pertinent part that "(t)he required publication ... of a substantive rule shall be made not less than 30 days before its effective date." The APA, however, makes no provision for publication of rules of particular applicability.
 
 
 23
 The legislative history of the APA confirms that decisions in agency ratemaking proceedings such as the establishment of a utility's allowable rate of return are rules of particular applicability and as such are free from the publication requirement. Section 3(a)(3) of the APA, the predecessor of section 552, 5 U.S.C. § 1002(a)(3) (1964), required every agency to publish in the Federal Register "substantive rules adopted as authorized by law and statements of general policy or interpretations formulated and adopted by the agency for the guidance of the public, but not rules addressed to and served upon named persons in accordance with law." Thus, as recognized in the Attorney General's Manual on the Administrative Procedure Act at 22 (1947), section 3(a)(3) was not intended to apply to "particularized rulemaking" such as ratemaking:
 
 
 24
 This exemption for "rules addressed to and served upon named persons in accordance with law" is designed to avoid filling the Federal Register with a great mass of particularized rule making, such as schedules of rates, which have always been satisfactorily handled without general publication in the Federal Register.
 
 
 25
 The phrase "substantive rules adopted as authorized by law" refers, of course, to rules issued by an agency to implement statutory policy. Examples are the Federal Power Commission's rules prescribing uniform systems of accounts and proxy rules issued by the Securities and Exchange Commission.
 
 
 26
 This section of the APA was subsequently amended to its present form as part of the Freedom of Information Act. Pub.L.No.89-487, 80 Stat. 250 (1966). The proviso "but not rules addressed to and served upon named persons" was deleted from the statute. However, the legislative history indicates that the amendment was intended merely to clarify, rather than change, which rules were required to be published in the Federal Register. United States Department of Justice, Attorney General's Memorandum on the Public Information Section of the Administrative Procedure Act 10 (1967); H.R.Rep.No.813, 89th Cong., 1st Sess. 6 (1965). The Senate committee that formulated section 552 of the APA stated:
 
 
 27
 In section 2 of the Administrative Procedure Act, rules are defined in such a way that there is no distinction between those of particular applicability (such as rates) and those of general applicability. It is believed that only rules, statements of policy, and interpretations of general applicability should be published in the Federal Register; those of particular applicability (are) legion in number and have no place in the Federal Register and are presently excepted but by more cumbersome language.
 
 
 28
 S.Rep.No.1219, 88th Cong., 2d Sess. 4 (1964) (emphasis added). See also Note, The Judicial Role in Defining Procedural Requirements for Agency Rulemaking, 87 Harv.L.Rev. 782, 788-89 (1974).
 
 
 29
 Thus, ratesetting, including the setting of a rate of return percentage, is a rule of particular applicability. Such a pronouncement, although it impacts upon the public, does not "so directly affect( ) pre-existing legal rights or obligations," Appalachian Power Co. v. Train, 566 F.2d 451, 455 (4th Cir. 1977), as to require publication in the Federal Register.[11]
 
 
 30
 Finally, the Networks contend that the FCC abused its discretion in expediting the tariffs' effective date. This claim, however, is no more reviewable than the challenge to the FCC's decision to forego pre-effectiveness review. The FCC's exercise of its discretion under section 203(b)(2) of the Communications Act to shorten section 203(b)(1)'s ninety-day notice period constitutes a preliminary decision concerning the timing of tariff rates. It does not constitute a final determination as to the lawfulness of the rates.
 
 
 31
 Petition dismissed in part and denied in part.
 
 
 
 *
 Honorable Charles M. Metzner, United States District Court Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 47 U.S.C. § 201(b) provides in pertinent part:
 (b) All charges, practices, classifications, and regulations for and in connection with such communication service, shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful .... The Commission may prescribe such rules and regulations as may be necessary in the public interest to carry out the provisions of this chapter.
 47 U.S.C. § 204(a) provides, inter alia :
 (a) Whenever there is filed with the Commission any new or revised charge, classification, regulation, or practice, the Commission may either upon complaint or upon its own initiative without complaint, upon reasonable notice, enter upon a hearing concerning the lawfulness thereof; and pending such hearing and the decision thereon the Commission ... may suspend the operation of such charge, classification, regulation, or practice, in whole or in part ....
 
 
 [2]
 The previous ceiling, approved in 1976, was 9.5 to 10 percent. American Telephone & Telegraph Co., 57 F.C.C.2d 960 (1976). During the pendency of the lengthy rate increase proceedings which followed, the FCC authorized an interim increase in the rate of return to 10.5 percent. American Telephone and Telegraph Co., 78 F.C.C.2d 661 (1980). The Networks petitioned this Court seeking review of the FCC's decision to forego pre-effectiveness review of AT& T's tariff revisions filed pursuant to the 10.5 percent interim rate. In ABC, Inc. v. FCC, 662 F.2d 155 (2d Cir. 1981), we dismissed the petition for lack of jurisdiction
 
 
 [3]
 Initially, AT&T proposed a uniform sixteen percent increase for virtually all of its interstate services. A later filing in response to an FCC inquiry revised the proposed rates in several categories. For purposes of this appeal we need only concern ourselves with private line services
 
 
 [4]
 47 U.S.C. § 203(b) provides:
 (1) No change shall be made in the charges, classifications, regulations, or practices which have been so filed and published except after ninety days notice to the Commission and to the public, which shall be published in such form and contain such information as the Commission may by regulations prescribe.
 (2) The Commission may, in its discretion and for good cause shown, modify any requirement made by or under the authority of this section either in particular instances or by general order applicable to special circumstances or conditions except that the Commission may not require the notice period specified in paragraph (1) to be more than ninety days.
 
 
 [5]
 5 U.S.C. § 553(d) provides in pertinent part:
 The required publication or service of a substantive rule shall be made not less than 30 days before its effective date, except-
 (3) as otherwise provided by the agency for good cause found and published with the rule.
 
 
 [6]
 5 U.S.C. § 552(a)(1) provides in pertinent part:
 Each agency shall separately state and currently publish in the Federal Register for the guidance of the public-
 (D) substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency....
 Except to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published....
 
 
 [7]
 The FCC did in fact undertake review of some of the challenged tariffs. See, e.g., American Telephone and Telegraph Co., 86 F.C.C.2d 861 (adopted May 21, 1981) (Series 7000 Tariff Review)
 
 
 [8]
 The FCC also declined to address other arguments that the Networks had raised previously in conjunction with AT&T's 16.4 percent interim tariff rate increase. The FCC incorporated its discussion of these issues in the Private Line Rate Case. 86 F.C.C.2d at 960
 
 
 [9]
 28 U.S.C. § 2342 provides, inter alia :
 The court of appeals has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of-
 (1) all final orders of the Federal Communication (sic) Commission made reviewable by section 402(a) of title 47 ....
 
 
 [10]
 The FCC's refusal to reject or to suspend and investigate filed rates is nonreviewable despite allegations by the Networks that the tariff filings were "patently unlawful." See Southern Ry. Co. v. Seaboard Allied Milling Corp., 442 U.S. 444, 455 n.9, 99 S.Ct. 2388, 2395 n.9, 60 L.Ed.2d 1017 (1979); Papago Tribal Util. Auth. v. Federal Energy Regulatory Commission, 628 F.2d 235, 247 (D.C.Cir.1980), cert. denied, 449 U.S. 1061, 101 S.Ct. 784, 66 L.Ed.2d 604 (1980)
 
 
 [11]
 The public is primarily interested not in an abstract rate of return prescription but in the actual tariffs filed by the carrier. AT&T in conformity with the public notice requirements of the Communications Act, 47 U.S.C. § 203(b), and the Commission's rules, 47 C.F.R. § 61.58, apprised the public of the filed tariff revisions